

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 10-70606 |
| GABRIEL G. RODRIGUEZ | § § | CHAPTER 7 |
| Debtor(s). | § § | JUDGE ISGUR |
| | § § | |
| MICHAEL SCHMIDT | § § § | |
| Plaintiff(s), | § § | |
| vs. | § § | ADVERSARY NO. 11-7012 |
| APOLINAR RODRIGUEZ, *et al* | § § § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

The issue before the Court is whether certain documents sought by Dewey Bellows in discovery are subject to a claim of privilege. Most of the documents are documents exchanged amongst the Trustee, the Trustee's counsel, and counsel for the Petitioning Creditors.

Communications amongst the Trustee, counsel for the Trustee, and counsel for the Petitioning Creditors that occurred after June 29, 2011, and that concern a matter of "common interest" are privileged under Rule 503(b)(1)(C) of the Texas Rules of Evidence, as made applicable by Rule 501 of the Federal Rules of Evidence.

Of the documents submitted for *in camera* inspection, only those labeled Trustee Bates No. 00001-00607 are not privileged because the communications occurred prior to June 29, 2011 (the date the adversary proceeding was filed). All other documents are privileged.[1]

---

[1] A few documents are not privileged under Rule 503(b)(1)(C), but are separately protected from discovery as will be discussed later.

**Background**

The procedural history of this case and its related litigation is convoluted. It arrives in the Bankruptcy Court as an adversary proceeding related to the involuntary bankruptcy of Gabriel G. Rodriguez ("Debtor"), filed on September 1, 2010. (Case No. 10-70606, ECF No. 1). Nine creditors (Apolinar Rodriguez, Petra Rodriguez, Maria Lilia G. Henkel, Israel Guerra, Jr., Filiberto A. Garza, Imelda Saenz, Mario Corona, Homera Corona, Blanca Corona Garza (hereinafter "Petitioning Creditors")) filed the involuntary bankruptcy petition against the Debtor.

All nine Petitioning Creditors filed claims against Debtor for bad faith trespass (claims #2-10) and converted royalties and interest (claims #11-19).

The Trustee objects to the bad faith trespass claims. (ECF No. 1). The Trustee argues that the combined total amount of the claims ($76,665,432.16) is greater than the damages from the alleged trespass. (Debtor unlawfully leased the Petitioning Creditors' property to Dewey Bellows Operating Company, Ltd. and the related operations may be responsible for a spill that damaged the property). The Trustee requests a valuation of the claims under § 502(b).

This adversary proceeding combines the Trustee's objections to the Petitioning Creditors' claims with an original complaint against Dewey Bellows for breach of contract and for a declaratory judgment of indemnity. (ECF No. 1). The Trustee argues that Dewey Bellows breached its contractual obligations to Debtor under the above lease. In addition, both the Trustee and the Petitioning Creditors argue that Dewey Bellows, under the terms of the lease, is contractually obligated to indemnify Debtor for damages to the leased property. In short, the

Trustee and the Petitioning Creditors argue that claims related to the damages from the spill must be paid by Dewey Bellows.

Dewey Bellows separately objects to the Petitioning Creditors' claims for bad faith trespass. Unlike the Trustee's limited objection, Dewey Bellows argues the claims should be disallowed in their entirety because of collateral estoppel, the "one-satisfaction" rule, res judicata, and the statute of limitations. (ECF No. 30 at 3).

Although this Memorandum Opinion only addresses a discovery dispute, an extensive history of the litigation is necessary for context.

**Origins of the Land Dispute and Litigation**

Debtor is the adopted son of Santiago Rodriguez, Jr. and Olivia Olivarez Rodriguez. *See Garza v. Rodriguez*, 2007 WL 2116411 at *1 (Tex.App.-San Antonio 2007) (*Garza III*). Maria Lopez de Peña, Santiago Rodriguez's aunt, devised to Santiago Rodriguez nine tracts of land. *Garza III*, at *1. Two of these tracts near Delmita, Texas (of 147.4 and 229.83 acres) are known as the "San Gregorio Ranch." (ECF No. 46 at 6).

The terms of the will stated that if Santiago Rodriguez should die without lawful issue of his body, the land should pass to Eusebia Lopez de Rodriguez (Maria Lopez de Peña's sister) or her heirs and their descendants. *Garza III*, at *1. The Petitioning Creditors are the heirs and descendants of Eusebia Lopez de Rodriguez.

Santiago Rodriguez died on October 19, 1984. *Garza III*, at *1. After his death, a long and protracted dispute over the land began between Debtor and the Petitioning Creditors. The Petitioning Creditors were eventually declared the rightful owners of the land, although the dispute did not completely end until July 2009.

The Petitioning Creditors also pursued other legal claims against the Debtor (seeking recovery for mis-paid royalties, damages for trespass to land, etc.). Although initially brought as one lawsuit along with the title issue, these separate legal claims were severed from the title issue into a separate lawsuit in December 2005. (ECF No. 47-5). This separate lawsuit was still pending when the involuntary bankruptcy proceeding was filed and the causes of action form the basis of the Petitioning Creditors' claims. (ECF No. 46 at 12).

Separately, the Petitioning Creditors sued Dewey Bellows Operating Company, Ltd. (the oil and gas company to whom Debtor unlawfully leased a portion of San Gregorio Ranch) and two of its principals. (ECF No. 46 at 15). This litigation began in mid-2007[2] and final judgment was entered in January 2010 (about eight months prior to the involuntary bankruptcy filing). (ECF No. 30, Ex. A-F).

**Prepetition State Court Litigation Between the Debtor and the Petitioning Creditors**

After Santiago Rodriguez died in 1984, his surviving wife (Olivia Olivarez Rodriguez) and adopted son (the Debtor, Gabriel Rodriguez) remained in possession of the land.

The Petitioning Creditors first sued Debtor and Olivia Olivarez Rodriguez on July 8, 1986 in the Starr County District Court. (ECF No. 47-1). This lawsuit is known as the "Original Partition Suit" because the Petitioning Creditors sought: (i) a declaration that they had superior title than Debtor to the nine tracts of land; and (ii) partition of the land amongst themselves. (ECF No. 47 at 12).

In response, the Debtor filed a probate action in Starr County Court at Law (sitting as Probate Court; hereinafter "Starr County Probate Court") on August 4, 1986. (ECF No. 47-4). Debtor then moved to dismiss the Original Partition Suit for lack of jurisdiction, arguing the

---

[2] A copy of this original petition was not provided to the Court, however both sides agree the litigation commenced at some point between July 2007 and September 2007.

property at issued belonged to Santiago Rodriguez's estate.  (ECF No. 47-13).  Debtor was appointed independent administrator over the estate on April 27, 1987.  (ECF No. 46 at 2).

It is not entirely clear what happened in the intervening years.  Nevertheless, the Starr County District Court dismissed the Original Partition Suit for lack of jurisdiction on June 10, 1998, and again on August 20, 1998.  (ECF No. 47-12).  The Texas Court of Appeals–San Antonio affirmed the dismissal.  *See Garza v. Rodriguez*, 18 S.W.3d 694 (Tex. App.—San Antonio 2000) (*Garza I*).

On July 14, 1998, within sixty days of dismissal from the Starr County District Court, the Petitioning Creditors refiled in the Starr Country Court at Law.  (ECF No. 47-2).  Texas law negates the application of the statute of limitations in certain situations if the lawsuit is refiled within sixty days in a court with proper jurisdiction.  TEX. CIV. PRAC. & REM. § 16.064.  This lawsuit is known as the "Second Partition Suit." This is a slight misnomer, however, as the Petitioning Creditors sought mis-paid oil and gas royalties in addition to the remedies sought in the Original Partition Suit (declaration of superior title and a request for partition).  (ECF No. 47-2 at 6).

The Starr County Court at Law dismissed the Petitioning Creditors' Second Partition Suit for lack of jurisdiction, but on appeal the Texas Court of Appeals—San Antonio reversed and remanded after finding the Starr County Court at Law had jurisdiction.  *See Garza v. Rodriguez*, 87 S.W. 3d 628 (Tex.App.—San Antonio 2002) (*Garza II*).

On December 8, 2005, on remand, the Starr County Court of Law granted Petitioning Creditors summary judgment on the issue of title to the nine tracts land.  (ECF No. 47-5).  Santiago Rodriguez had died without lawful issue of his body.  (Debtor was Santiago Rodriguez's only child and, as an adopted son, not issue of his body).  According to the terms of

the will, title to the land vested in Eusebia Lopez de Rodriguez, or her heirs and descendants, when Santiago Rodriguez died in 1984. Because Eusebia Lopez de Rodriguez had died prior to Santiago Rodriguez, title vested in the Petitioning Creditors (Eusebia Lopez de Rodriguez's heirs and descendants).

In addition to granting the Petitioning Creditors summary judgment on the title issue, the Starr County Court at Law severed the proceedings. (ECF No. 47-5). The title issue was severed into a new case (Cause No. PR-98-37(B)), and the grant of summary judgment represented final judgment in that case. (ECF No. 47-5). All other claims (e.g., for mis-paid royalties) remained pending in the original case (Cause No. PR-98-37). (ECF No. 47-5).

On appeal, the Texas Court of Appeals—San Antonio affirmed the Starr County Court of Law's grant of summary judgment on the title issue. *See Garza v. Rodriguez*, 2007 WL 2116411 (Tex.App.-San Antonio 2007) (*Garza III*)

One month prior to the affirmance in *Garza III*, Debtor sought to pursue administration of Santiago Rodriguez's estate. (ECF No. 46 at 14). The 1986 probate action filed in Starr County Probate Court had been dormant since at least December 8, 1988. *See Garza v. Rodriguez*, 2009 WL 2264359 (Tex.App.—San Antonio 2009) (*Garza IV*). Debtor was unsuccessful. The Starr County Probate Court dismissed the case, holding that Santiago Rodriguez's estate was closed. (*Id.* at *1). The Texas Court of Appeals—San Antonio affirmed the dismissal. (*Id.* at *1).

Meanwhile, the Petitioning Creditors still had an active lawsuit against Debtor (and Debtor's mother, Olivia Olivarez Rodriguez) in Starr County District Court (the lawsuit from which the title action was severed in December 2005). The Petitioning Creditors filed a supplemental petition to this lawsuit on August 16, 2010. (ECF No. 74-3). The supplemental

petition sought: (i) recovery of mis-paid royalties; (ii) damages for trespass and nuisance; (iii) declaratory judgment as to title to negate a *lis pendens* on the property; (iv) damages for tortious interference of contractual relations; (v) recovery of fraudulent transfers; (vi) punitive damages; and, (vii) recovery of legal fees.

This lawsuit, still ongoing at the time of the involuntary bankruptcy filing, forms the basis of the Petitioning Creditors' claims against the Debtor.

**The Saltwater Disposal Agreement**

Debtor unlawfully possessed the land, including San Gregorio Ranch, from Santiago Rodriguez's death until approximately December 2005—the month the Starr County Court at Law granted summary judgment for the Petitioning Creditors on the issue of title. (ECF No. 30 at 6).

On October 22, 2002, during the period of Debtor's unlawful possession, the Debtor entered into a Saltwater Disposal Agreement ("SWDA") with Dewey Bellows Operating Company, Ltd. (ECF No. 30, Ex. B-1). Under the terms of the SWDA, Debtor leased two acres of the San Gregorio Ranch to Dewey Bellows for the purpose of operating a commercial saltwater disposal system. (ECF No. 30, Ex. B-1). The SWDA contained the following important provision:

> [Dewey Bellows, the lessee] shall indemnify and hold lessor harmless from all loss and liability arising from lessee's operations regardless of whether it arises from lessor's acts of negligence or that of others. Gerality [sic] of this lessee shall indemnify and hold lessor harmless from all loss and liability for claims asserted to arise out of lessee's operations with respect to: (a) discharge of saltwater, oil, or of hazardous substances as defined by any federal, state or local environmental law, or the presence of hazardous substances affecting the leased premises whether or not the same originates or emanates from the leased premises or any continuous property owned or occupied by lessee: and (b) removal costs, incurred or

>required by federal state of [sic] local government with respect to saltwater, oil or hazardous substances.

(ECF No. 47-14 at 3).

A month prior to entering into the SWDA, Omimex Petroleum, Inc. assigned to Dewey Bellows the rights to an oil and gas lease (hereinafter "Dewey Bellows Mineral Lease").[3] (ECF No. 30 at 8). The Dewey Bellows Mineral Lease covers a total of 518.56 acres—the entire 377.23 acres of the San Gregorio Ranch and an additional 141.33 acres on property not owned by the Petitioning Creditors. (ECF No. 30 at 8).

At some point during 2007 to 2008, a spill occurred as a result of Dewey Bellows's operations and caused extensive damage to the San Gregorio Ranch. (ECF No. 30 at 2). The Petitioning Creditors discovered the spill no later than January 28, 2008. (ECF No. 30, Ex. A-2)

The cause of the spill is disputed. Dewey Bellows maintains the oil and gas operations under the Dewey Bellows Mineral Lease caused the spill. The Petitioning Creditors argue both the commercial saltwater disposal operations under the SWDA and the oil and gas operations under the Dewey Bellows Mineral Lease caused the spill.

**Prior Litigation between the Petitioning Creditors and Dewey Bellows**

In mid-2007, around the time the Texas Court of Appeals—San Antonio affirmed the grant of summary judgment as to title in *Garza III*, the Petitioning Creditors sued Dewey Bellows Operating Company, Ltd., Dewey Bellows (the owner of the company), and Gary Bellows (the owner's son) in state court for trespass to land. (ECF No. 46 at 10).

The original petition was filed prior to discovery of the spill, but it has been amended several times. The Petitioning Creditors' fourth amended petition, filed on January 5, 2009,

---

[3] No party has alleged that this assignment was not valid.

sought, amongst other things, compensation for damages related to the spill and for trespass to land. (ECF No. 30, Ex. B-6).

The case was tried to a jury in September 2009. On January 20, 2010, the Petitioning Creditors received a final judgment against Dewey Bellows in the amount of $537,844.86, plus costs. (ECF No. 30, Ex. A-F at 2). Dewey Bellows paid the judgment and received a full and complete release of judgment on July 27, 2010. (ECF No. 30, Ex. A-G at 2).

The parties dispute the effect of this judgment on the Petitioning Creditors' claims (and, therefore, the Estate's indemnification rights against Dewey Bellows).

**Discovery Dispute**

The discovery dispute concerns communications between counsel for the Trustee and counsel for the Petitioning Creditors. The main issue is the extent that Texas Rule of Evidence 501(b)(1)(C) protects communications where the parties share a "common interest."

The alleged common interest between the Trustee and the Petitioning Creditors is an indemnity cause of action against Dewey Bellows for the benefit of Debtor's Estate (which would, therefore, benefit the Petitioning Creditors). This would occur, for example, if the Petitioning Creditors have valid claims against the Debtor for which Dewey Bellows is contractually obligated to indemnify the Debtor.

Dewey Bellows objected to the Trustee's assertion of the "common interest" privilege. The Trustee submitted the documents for an *in camera* inspection.

## Analysis

The Federal Rules of Evidence provide that state privilege law governs in civil actions and proceedings where state law provides the rule of decision, except as otherwise required by

the Constitution, an Act of Congress, or rules prescribed by the Supreme Court pursuant to their statutory authority. FED. R. EVID. 501.

For example, the work product doctrine, even where state law provides the rules of decision, is governed by the uniform federal standard contained in Rule 26 of the Federal Rules of Civil Procedure. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695 (10th Cir. 1998); *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958 (3d Cir. 1988) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity case[s], by a uniform standard embodied in Fed. R. Civ. P. 26(b)(3) . . . .").

Excepting work product, state privilege law governs in this adversary proceeding. The Petitioning Creditors' claims are state law tort claims. The Trustee's causes of action against Dewey Bellows are for state law breach of contract and indemnity. Because Texas law provides the rules of decision, state privilege law (usually) governs.

**Texas Rule 503(b)(1)(C) ["Allied Litigant" Doctrine]**

The Texas Rules of Evidence state:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party *in a pending action and concerning a matter of common interest therein* . . . .

TEX R. EVID. 503(b)(1)(C) (emphasis added). The language of the rule indicates at least two requirements: (i) ongoing litigation (the "pending action" requirement); and (ii) the communications must concern a matter of "common interest" between separately represented parties.

A recent Texas Supreme Court case, which considered the contours of the privilege contained in Rule 503(b)(1)(C), indicates this interpretation is correct. *See In re XL Specialty Ins. Co.*, --- S.W.3d ---, 2012 WL 2476851 (Tex. June 29, 2012) (referring to Rule 503(b)(1)(C) as the "allied litigant" doctrine and noting that the terms "joint client" privilege, "joint defense" privilege, and "common interest" privilege were all inaccurate descriptions).

In contrast to the similar federal rule, Texas has a "pending action" requirement. TEX. R. EVIDENCE 503(b)(1)(C) ("in a pending action"); *In re XL Specialty Ins. Co.*, 2012 WL 2476851 at *3 ("[I]n jurisdictions like Texas . . . no commonality of interest exists absent actual litigation."). Applied to our situation, this means that communications prior to July 29, 2011 (the date the adversary proceeding was filed) are not eligible for this privilege.[4]

The communication must relate to a matter of "common interest." The recent Texas Supreme Court case indicates that what is generally known as the "common interest" privilege would accurately define Rule 503(b)(1)(C) were it not for the "pending action" requirement. *In re XL Specialty Ins. Co.*, 2012 WL 2476851 at *3 n.11 ("Because the Texas rule has both a pending action and a common interest requirement, however, the 'allied litigant' doctrine more accurately describes our law.").

The most recent Restatement, cited by the Texas Supreme Court, indicates the "common interest" privilege "appl[ies] equally to two or more separately represented persons *whatever their denomination in pleadings*." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt. b (2000) (emphasis added). Applied to our situation, the fact that the Trustee and the

---

[4] There was ongoing litigation between the Petitioning Creditors and the Debtor when the involuntary bankruptcy proceeding was filed. However, the matter of "common interest" between the Petitioning Creditors and the Trustee relates only to this adversary proceeding, not to the prepetition litigation between Petitioning Creditors and the Debtor. The matter of "common interest" must relate to the litigation then pending. Unrelated ongoing litigation will not shield communications on a matter of "common interest" that is only relevant to future litigation. TEX. R. EVID. 501(b)(1)(C) ("in a pending action and concerning a matter of common interest *therein*") (emphasis added).

Petitioning Creditors are on opposite sides of the adversary proceeding[5] does not prevent the Trustee from invoking the privilege where the two sides share a common interest.

Finally, the Texas Supreme Court pointed out that the Rule 503(b)(1)(C) "protects communications made between a client, or the client's lawyer, to another party's lawyer, not to the party itself." *In re XL Specialty Ins. Co.*, 2012 WL 2476851 at *3. Applied to our situation, any communications between the Trustee and any of the Petitioning Creditors directly would not be privileged.

Applying these rules, the Court determines that the documents labelled "Trustee Bates No. 00001-00607" are not protected by Rule 503(b)(1)(C) because the communications occurred prior to June 29, 2011 (the date the adversary proceeding was filed) and therefore violate the "pending action" requirement.

The documents labelled "Trustee Bates No. 01572-01582" are also not protected by Rule 503(b)(1)(C) because they either are not communications between parties who share a "common interest" or the communications do not concern the matter of "common interest." However, as discussed below, these communications are protected from discovery by Rule 26(b)(3) and (b)(4) of the Federal Rules of Civil Procedure.

All other documents submitted for review are privileged under Rule 503(b)(1)(C).

**Work Product Doctrine**

The documents labelled "Trustee Bates No. 01572-01582" are protected from discovery by Rule 26(b)(3) and (b)(4) of the Federal Rules of Civil Procedure.

---

[5] The fact that the Trustee and the Petitioning Creditors are on opposite sides of this lawsuit may be misleading. Two separate adversary proceedings have been combined. The Trustee and the Petitioning Creditors are adverse as to the Trustee's objections to the Petitioning Creditors claims, but are not adverse as to the causes of action brought by the Trustee against Dewey Bellows.

As discussed above, the work product doctrine, even where state law provides the rule of decision, is governed by the uniform federal standard contained in Rule 26 of the Federal Rules of Civil Procedure. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695 (10th Cir. 1998); *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958 (3d Cir. 1988) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity case, by a uniform standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ."). [6]

The Federal Rules of Civil Procedure provide that: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3)(A). Upon a showing that the materials are otherwise discoverable and that a party has a substantial need for the materials, such materials may be discovered. FED. R. CIV. P. 26(b)(3)(A). Even the exception to the general rule, however, is subject to the protections of Rule 26(b)(4). FED. R. CIV. P. 26(b)(3)(A).

Rule 26(b)(4) makes clear that certain communications between an attorney and an expert witness are protected. Specifically, Rule 26(b)(4)(C) states that "Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B) . . . except to the extent that the communications: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." FED. R. CIV. P. 26(b)(4)(C).

---

[6] An alternative interpretation is that Rule 26(b)(3) narrows the definition of what is "discoverable" under Rule 26(b)(1). Therefore, even if state privilege law (as concerns the work product doctrine) was applicable under Rule 501 of the Federal Rules of Evidence, it would not be necessary to invoke a privilege to protect documents declared nondiscoverable.

Rule 26(b)(3), as clarified by Rule 26(b)(4), protects the documents labelled "Trustee Bates No. 01572-01582." The documents are communications between counsel for the Trustee and a witness required to file a report under Rule 26(a)(2)(B), and the communications do not fall under any of the three categories enumerated in Rule 26(b)(4)(C).

## **Conclusion**

The Court will enter an Order in accordance with this Memorandum Opinion.