## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

ENTERED
11/16/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 10-70606** |
| **GABRIEL G. RODRIGUEZ** | § | **CHAPTER  7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **MICHAEL SCHMIDT** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 11-7012** |
| | § | |
| **APOLINAR RODRIGUEZ**, *et al* | § | |
| | § | |
| Defendant(s). | § | |

## <u>MEMORANDUM OPINION</u>

Dewey Bellows Operating Company, Ltd.'s Motion for Summary Judgment, (ECF No. 30), is granted in part and denied in part.  The Petitioning Creditors' Motion for Partial Summary Judgment, (ECF No. 53), is denied.

As a result of this ruling:

- Apolinar Rodriguez's Claim #2 is disallowed in the amount of $15,000,000.00;

- Petra Rodriguez's Claim #3 is disallowed in the amount of $15,000,000.00;

- Maria Lilia G. Henkel's Claim #4 is disallowed in the amount of $7,500,000.00;

- Israel Guerra, Jr.'s Claim #5 is disallowed in the amount of $7,500,000.00;

- Filiberto A. Garza's Claim #6 is disallowed in the amount of $7,500,000.00;

- Imelda Saenz's Claim #7 is disallowed in the amount of $7,500,000.00;

- Maria Corona's Claim #8 is disallowed in the amount of $5,025,000.00;

- Homero Corona's Claim #9 is disallowed in the amount of $5,025,000.00; and

- Blanca Corona Garza's Claim #10 is disallowed in the amount of $4,950,000.00.

### Background

The procedural history of this case and its related litigation is convoluted. It arrives in the Bankruptcy Court as an adversary proceeding related to the involuntary bankruptcy of Gabriel G. Rodriguez ("Debtor"), filed on September 1, 2010. (Case No. 10-70606, ECF No. 1). Nine creditors (Apolinar Rodriguez, Petra Rodriguez, Maria Lilia G. Henkel, Israel Guerra, Jr., Filiberto A. Garza, Imelda Saenz, Maria Corona, Homera Corona, Blana Corona Garza (hereinafter "Petitioning Creditors")) filed the involuntary bankruptcy petition against the Debtor.

From 1986 to 2009, the Petitioning Creditors and Debtor fought a long and protracted dispute over nine tracts of land located in Starr County, Texas. (ECF No. 47-2 at 1). From October 2002 to October 2007, Debtor leased a portion of the land to Dewey Bellows Operating Company, Ltd. in order to conduct commercial saltwater disposal operations. The leased land ended up damaged by pollution, although the cause of the pollution remains disputed.

The Petitioning Creditors were eventually declared the lands' rightful owners on December 8, 2005. (ECF No. 47-5).[1] The Petitioning Creditors were still involved in other litigation related to the land dispute (e.g., a cause of action to recover mispaid royalties), when they filed this involuntary bankruptcy proceeding.

Each of the nine Petitioning Creditors filed two separate claims in this bankruptcy, for a total of eighteen claims. The first nine claims (claims #2-10) are referred to by the parties as the

---

[1] This is the date the state district court granted the Petitioning Creditors' summary judgment on the issue of title to the land. (ECF No. 47-5). A state appellate court affirmed this decision in July 2007. *Garza v. Rodriguez*, 2007 WL 2116411 (Tex. App.—San Antonio 2007) (*Garza III*).

"Trespass and Property Damages Proofs of Claims."  The sum of these nine claims equals: (i) the cost to restore the polluted land to its original condition; plus, (ii) the amount of Dewey Bellows's gross revenues traceable to the lease.  (*See, e.g.*, Claim 2-2).  These claims are the subject of this Memorandum Opinion.

The total cost to restore the polluted land to its original condition is alleged to be $75,000,000.00.  The total amount of Dewey Bellows's gross revenues (plus interest) traceable to the lease is $1,665,432.16.  Each Petitioning Creditor filed a claim corresponding to the extent of their interest in the land.  For example, Apolinar Rodriguez owns a 20% interest in the land and filed a claim for $15,333,086.43 (which represents 20% of the total $76,665,432.16).  (Claim 2-2).

The Trustee objects to the Trespass and Property Damages Proofs of Claims.  (ECF No. 1).  The Trustee argues that the combined total amount of the claims ($76,665,432.16) exceeds the amount of damages (specifically, the costs to restore the land to its original condition). (ECF No. 1 at 7).  The Trustee also requests a valuation of the claims.

Dewey Bellows joined in the Trustee's objection to the Trespass and Property Damages Proofs of Claims.  (ECF No. 22 at 2-3).  Dewey Bellows objected to these claims under additional grounds as well.  (ECF No. 22 at 7-8).

This adversary proceeding combines the Trustee's and Dewey Bellows's objections to the Petitioning Creditors' Trespass and Property Damages Proofs of Claims with an original complaint by the Trustee against Dewey Bellows for breach of contract and a declaratory judgment for indemnity.  (ECF No. 1).  The Trustee argues that Dewey Bellows breached its contractual obligations to Debtor under the above lease.  (ECF No. 1 at 7-8).  In addition, both the Trustee and the Petitioning Creditors argue that Dewey Bellows, pursuant to the terms of the

lease, is contractually obligated to indemnify Debtor.  (ECF No. 1 at 8-9).  In short, the Trustee and the Petitioning Creditors argue that Dewey Bellows (and not Debtor's estate) must pay any valid claim of the Petitioning Creditors related to the lease.

An extensive history of the litigation is necessary to place this adversary proceeding in its proper context.

**Origins of the Land Dispute and Litigation**

Debtor is the adopted son of Santiago Rodriguez, Jr. and Olivia Olivarez Rodriguez.  *See Garza v. Rodriguez*, 2007 WL 2116411 at *1 (Tex. App.-San Antonio 2007) (*Garza III*).  Maria Lopez de Peña, Santiago Rodriguez's aunt, devised nine tracts of land to Santiago Rodriguez. *Garza III*, at *1.  Two of these tracts (of 147.4 and 229.83 acres) are known as the "San Gregorio Ranch."  (ECF No. 46 at 6).

The terms of the will stated that if Santiago Rodriguez should die without lawful issue of his body, the land would pass to Eusebia Lopez de Rodriguez (Maria Lopez de Peña's sister) or her heirs and their descendants.  *Garza III*, at *1.  The Petitioning Creditors are the heirs and descendants of Eusebia Lopez de Rodriguez.

Santiago Rodriguez died on October 19, 1984.  *Garza III*, at *1.  After his death, the long and protracted dispute over the land began.  The Petitioning Creditors were eventually declared the rightful owners of the land, although the dispute did not fully end until July 2009.

The Petitioning Creditors also pursued other legal claims against the Debtor (seeking recovery for mispaid royalties, damages for trespass to land, etc.).  (ECF No. 47-2).  Although first brought together with the title action, these separate legal claims were severed from the title action into a separate lawsuit in December 2005.  (ECF No. 47-5).  The separate lawsuit was still

pending when the involuntary bankruptcy proceeding was filed.  These causes of action form the basis of the Petitioning Creditors' claims.  (ECF No. 46 at 12).

Separately, the Petitioning Creditors sued Dewey Bellows Operating Company, Ltd. (the oil and gas company to whom Debtor unlawfully leased a portion of San Gregorio Ranch) and two of its principals.  (ECF No. 46 at 15).  This litigation began in mid-2007[2] and final judgment was entered in January 2010 (about eight months prior to the involuntary bankruptcy filing). (ECF No. 30, Ex. A-F).[3]

**Prepetition State Court Litigation between Debtor and Petitioning Creditors**

After Santiago Rodriguez died in 1984, his surviving wife (Olivia Olivarez Rodriguez) and adopted son (the Debtor, Gabriel Rodriguez) remained in possession of the land.

The Petitioning Creditors first sued Debtor and Olivia Olivarez Rodriguez on July 8, 1986, in Starr County District Court.  (ECF No. 47-1).  This lawsuit is known as the "Original Partition Suit" because the Petitioning Creditors sought: (i) a declaration that they had superior title to the nine tracts of land; and, (ii) partition of the land amongst themselves.  (ECF No. 47 at 12).

In response, the Debtor filed a probate action in Starr County Court at Law (sitting as Probate Court; hereinafter "Starr County Probate Court") on August 4, 1986.  (ECF No. 47-4). Debtor then moved to dismiss the Original Partition Suit for lack of jurisdiction, arguing the property at issue belonged to Santiago Rodriguez's estate.  (ECF No. 47-13).  Debtor was appointed independent administrator over Santiago Rodriguez's estate on April 27, 1987.  (ECF

---

[2] A copy of this original petition was not provided to the Court, however both sides agree the litigation commenced at some point between July 2007 and September 2007.

[3] The exhibit numbering system used by Dewey Bellows in its Motion for Summary Judgment is not helpful.

No. 46 at 2).  On April 24, 1987, Debtor obtained an order from the Starr County Probate Court that he and his mother (Olivia Rodriguez) were entitled to equal shares of Santiago Rodriguez, Jr.'s estate.  (ECF No. 72-3 at 3).

It is not entirely clear what happened in the intervening years.  Nevertheless, the Starr County District Court dismissed the Original Partition Suit for lack of jurisdiction on June 10, 1998.  (ECF No. 47-12).  The Texas Court of Appeals—San Antonio affirmed the dismissal.  *See Garza v. Rodriguez*, 18 S.W.3d 694 (Tex. App.—San Antonio 2000) (*Garza I*).

On July 14, 1998, within sixty days of dismissal from the Starr County District Court, the Petitioning Creditors refiled in the Starr County Court at Law.  (ECF No. 47-2).  Texas law negates the application of the statute of limitations in certain situations if the lawsuit is refiled within sixty days in a court with proper jurisdiction.  TEX. CIV. PRACTICE & REMEDIES § 16.064. The refiled lawsuit is known as the "Second Partition Suit."  This is a slight misnomer, however, as the Petitioning Creditors sought additional damages (e.g., for mispaid oil and gas royalties) in addition to the remedies sought in the Original Partition Suit (declaration of superior title and a request for partition).  (ECF No. 47-2 at 6).

The Starr County Court at Law dismissed the Petitioning Creditors' Second Partition Suit for lack of jurisdiction, but on appeal the Texas Court of Appeals—San Antonio reversed and remanded after finding the Starr County Court at Law had jurisdiction.  *See Garza v. Rodriguez*, 87 S.W.3d 628 (Tex. App.—San Antonio 2002) (*Garza II*).

On December 8, 2005, on remand, the Starr County Court of Law granted Petitioning Creditors summary judgment on the issue of title to the nine tracts of land.  (ECF No. 47-5). Santiago Rodriguez had died without lawful issue of his body.  (Debtor was Santiago Rodriguez's only child and, as an adopted son, not issue of his body).  According to the terms of

the will, title to the land vested in Eusebia Lopez de Rodriguez, or her heirs and their descendants, when Santiago Rodriguez died in 1984 without lawful issue of his body. *Garza III*, at *1. Because Eusebia Lopez de Rodriguez had died prior to Santiago Rodriguez, title vested in the Petitioning Creditors (Eusebia Lopez de Rodriguez's heirs and descendants). *Garza III*, at *1.

In addition to granting summary judgment to the Petitioning Creditors, the Starr County Court at Law severed the proceedings. (ECF No. 47-5). The title action was severed into a new case (Cause No. PR-98-37(B)), and the grant of summary judgment represented a final judgment in that case. (ECF No. 47-5). All other claims (e.g., for mispaid royalties) remained pending in the original case (Cause No. PR-98-37). (ECF No. 47-5).

On appeal, the Texas Court of Appeals—San Antonio affirmed the Starr County Court of Law's grant of summary judgment in the title action (Cause No. PR-98-37(B)). *See Garza v. Rodriguez*, 2007 WL 2116411 (Tex. App.—San Antonio 2007) (*Garza III*).

One month prior to the Texas Court of Appeals—San Antonio's affirmance in *Garza III*, Debtor sought to pursue administration of Santiago Rodriguez's estate. (ECF No. 46 at 14). The 1986 probate action filed in Starr County Probate Court had been dormant since at least December 8, 1988. *See Garza v. Rodriguez*, 2009 WL 2264359 (Tex. App.—San Antonio 2009) (*Garza IV*). Debtor was unsuccessful. The Starr County Probate Court dismissed the case, finding that Santiago Rodriguez's estate was closed. *Garza IV*, at *1. The Texas Court of Appeals—San Antonio affirmed the dismissal. *Garza IV*, at *1.

Meanwhile, the Petitioning Creditors still had an active lawsuit against Debtor (and Debtor's mother, Olivia Olivarez Rodriguez) in Starr County District Court (the lawsuit from which the title action was severed in December 2005). The Petitioning Creditors filed a

supplemental petition to this lawsuit on August 16, 2010.  (ECF No. 47-3).  The supplemental petition sought: (i) recovery of mispaid royalties; (ii) damages for trespass and nuisance; (iii) declaratory judgment as to title to negate a *lis pendens* on the property; (iv) damages for tortious interference of contractual relations; (v) recovery of fraudulent transfers; (vi) punitive damages; and, (vii) recovery of legal fees.  (ECF No. 47-3 at 4-11).

This lawsuit, still ongoing at the time of the involuntary bankruptcy filing, forms the basis of the Petitioning Creditors' various claims against the Debtor.[4]

**The Saltwater Disposal Agreement**

Debtor unlawfully possessed the land, including San Gregorio Ranch, from Santiago Rodriguez's death until some point after December 8, 2005—the day the Starr County Court at Law granted summary judgment for the Petitioning Creditors on the issue of title.

On October 22, 2002, during the period of unlawful possession, the Debtor entered into a Saltwater Disposal Agreement ("SWDA") with Dewey Bellows Operating Company, Ltd.  (ECF No. 30, Ex. B-1).  Under the SWDA's terms, Debtor leased two acres of the San Gregorio Ranch to Dewey Bellows for the purpose of operating a commercial saltwater disposal system.  (ECF No. 30, Ex. B-1).

The SWDA contains two particularly noteworthy provisions.  The first is the "Removal and Replacement Provision":

> [Lessee] shall pay Lessor for all damages sustained by Lessor as [sic] result of operations conducted by Lessee.  Without limiting the gerality [sic] of this lease Lessee shall repair all damage done to Lessor's land by saltwater or other contaminants by removing and disposing of the affected soil and replacing it with soil of like productivity.

(ECF No. 47-14 at 3).  The second is the "Indemnification Provision":

---

[4] The Petitioning Creditors filed additional claims which are not the subject of this Memorandum Opinion.

> [Lessee] shall indemnify and hold lessor harmless from all loss and liability arising from lessee's operations regardless of whether it arises from lessor's acts of negligence or that of others.  Gerality [sic] of this lessee shall indemnify and hold lessor harmless from all loss and liability for claims asserted to arise out of lessee's operations with respect to: (a) discharge of saltwater, oil, or of hazardous substances as defined by any federal, state or local environmental law, or the presence of hazardous substances affecting the leased premises whether or not the same originates or emanates from the leased premises or any continuous property owned or occupied by lessee: and (b) removal costs, incurred or required by federal state of [sic] local government with respect to saltwater, oil or hazardous substances.

(ECF No. 47-14 at 3).

A month prior to entering into the SWDA, Omimex Petroleum, Inc. assigned to Dewey Bellows the rights to an oil and gas lease (hereinafter "Dewey Bellows Mineral Lease").[5]  (ECF No. 30 at 8).  The Dewey Bellows Mineral Lease covers a total of 518.56 acres—the entire 377.23 acres of the San Gregorio Ranch as well as an additional 141.33 acres on property not owned by the Petitioning Creditors.  (ECF No. 30 at 8).

At some point during 2007 to 2008, a spill occurred as a result of Dewey Bellows's operations and caused extensive damage to the San Gregorio Ranch.  (ECF No. 30 at 2).  The Petitioning Creditors discovered the spill no later than January 28, 2008.  (ECF No. 30, Ex. A-2).

The cause of the spill is disputed.  Dewey Bellows maintains the oil and gas operations under the Dewey Bellows Mineral Lease caused the spill.  The Petitioning Creditors argue both the commercial saltwater disposal operations under the SWDA and the oil and gas operations under the Dewey Bellows Mineral Lease caused the spill.

---

[5] No party challenges the validity of the assignment.

**Prior Litigation between the Petitioning Creditors and Dewey Bellows**

In mid-2007, around the time the Texas Court of Appeals—San Antonio affirmed the grant of summary judgment in the title action (*Garza III*), the Petitioning Creditors sued Dewey Bellows Operating Company, Ltd., Dewey Bellows (the owner of the company), and Gary Bellows (the owner's son) in state court for trespass to land. (ECF No. 46 at 10).

The original petition was filed prior to the spill's discovery, but was amended several times. The Petitioning Creditors' fourth amended petition, filed on January 5, 2009, alleged the following causes of action: (i) negligence, gross negligence, and waste; (ii) trespass; and, (iii) fraudulent transfers. (ECF No. 30, Ex. B-6 at 7-11).[6]

The case was tried to a jury in September 2009. (ECF No. 30, Ex. B-7). The jury was asked two similar yet distinct questions about Dewey Bellows's alleged negligence. The first question was structured as follows:

> Did the negligence, if any, of Dewey Bellows Operating Company Ltd. proximately cause damage to San Gregorio Ranch or its owners?
>
> For this question only Dewey Bellows Operating Company Ltd. was negligent if—
>
> a. Dewey Bellows Operating Company Ltd. undertook to perform services it knew or should have known were necessary for the protection of San Gregorio Ranch, and
>
> b. Dewey Bellows Operating Company Ltd. failed to exercise reasonable care in performing these services, and
>
> c. Performance of these services by Dewey Bellows Operating Company Ltd. increased the risk of damage to San Gregorio Ranch.

(ECF No. 30, Ex. B-7 at 5). The jury answered this question in the negative. (ECF No. 30, Ex. B-7 at 5).

---

[6] The Petitioning Creditors also sought declaratory and injunctive relief. (ECF No. 30, Ex. B-6).

The second question was structured as follows:

> Did the negligence, if any, of Dewey Bellows Operating Company Ltd. proximately cause damage to San Gregorio Ranch or its owners?
>
> For this question only "Negligence" means failure to use ordinary care, that is, failing to do that which a reasonably prudent Operator of ordinary prudence would have done under the same or similar circumstances or doing that which an Operator of ordinary prudence would not have done under the same or similar circumstances.

(ECF No. 30, Ex. B-7 at 7).  The jury answered this question affirmatively.  (ECF No. 30 at Ex. B-7).  After answering this question in the affirmative, the jury found that $400,000.00 would fairly and reasonably compensate the owners of San Gregorio Ranch for the reduction in fair market value of their property.  (ECF No. 30, Ex. B.-7 at 7).

The jury also found that: (i) Dewey Bellows did not commit a trespass on San Gregorio Ranch; and, (ii) Dewey Bellows was not part of a conspiracy that harmed San Gregorio Ranch or its owners.  (ECF No. 30, Ex. B-7 at 10-11).  Additionally, the jury did not find by clear and convincing evidence that the property damage to San Gregorio Ranch resulted from the gross negligence of Dewey Bellows.  (ECF No. 30, Ex. B-7 at 12).

The state court entered a final judgment on January 20, 2010.  (ECF No. 30, Ex. B-8 at 2).  In addition to the $400,000.00 jury verdict, the state court granted Petitioning Creditors a directed verdict in the amount of $81,041.86.  (ECF No. 30, Ex. B-8 at 1).  Although on its face the final judgment does not list the reason for the $81,041.86 directed verdict, both sides acknowledge that this amount corresponds to Dewey Bellows's gross revenues for the 60th month of the SWDA.  (ECF No. 30 at 30, No. 46 at 29).  With 5% prejudgment interest, the amount of the Final Judgment was $537,844.86 (plus costs).  (ECF No. 30, Ex. B-8 at 2).

Dewey Bellows paid the judgment and received a full and complete release of judgment on July 21, 2010.  (ECF No. 30, Ex. B-8).

Dewey Bellows moves for summary judgment on the Petitioning Creditors' Trespass and Property Damage claims.  Dewey Bellows breaks down these claims into separate components: (i) the restoration costs or property damage portions, and (ii) the gross revenues portion.  Dewey Bellows argues that both portions of the Petitioning Creditors' Trespass and Property Damage claims should be disallowed in full.

The Petitioning Creditors move for partial summary judgment.  They argue that there is no genuine issue that Debtor trespassed in "bad-faith" and that, as a result, they are entitled to the gross revenues related to the operations conducted under the SWDA.[7]

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the

---

[7] The Petitioning Creditors already received the amount of gross revenues related to month 60 of the SWDA, and are therefore only seeking the gross revenues related to months 1-59.

Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[8] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence

---

[8] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

<u>Analysis</u>

**I.      Dewey Bellows's Standing to Object to the Petitioning Creditors' Claims**

Only parties in interest may object to proofs of claim.  11 U.S.C. § 502(a).  The Bankruptcy Code does not define the term a "party in interest."

The Court finds that Dewey Bellows is a "party in interest."

The Trustee is currently seeking a declaratory judgment that Dewey Bellows is required to indemnify the estate for both the restoration cost and gross revenue portions of the Petitioning Creditors' Trespass and Property Damage claims.  (ECF No. 1 at 8).  The Trustee and Dewey Bellows's objections to these claims are not coextensive.  The Trustee only objects to the amounts of these claims, while Dewey Bellows argues that the claims should be disallowed in full.

Dewey Bellows potentially faces extensive liability if these claims are allowed.  Not allowing Dewey Bellows to object would place them in a position where, although they face

extensive liability, they would be unable to sufficiently protect their own legal interests.  The

Third Circuit said the following in a case addressing an analogous issue:

> When a federal court gives its approval to a plan that allows a party to put
> its hand into other people's pockets, the ones with the pockets are entitled
> to be fully heard and to have their legitimate objections addressed.

*In re Global Indus. Tech., Inc.*, 645 F.3d 201 (3rd Cir. 2011) (holding that the debtor's insurers,

who faced extensive defense and indemnification costs, were parties in interest under § 1109).

Dewey Bellows, who has a significant financial stake of these proceedings, is a party in interest

whose objections to these claims must be heard.

## II.    Restoration Costs

The $75,000,000.00 restoration cost constitutes the largest portion of the Petitioning

Creditors' Trespass and Property Damages Claims. Dewey Bellows objects to this portion of the

claim under § 502(b)(1).   The Court grants Dewey Bellows's objection to the Petitioning

Creditors' Trespass and Property Damages Claims to the extent the claim seeks to recover the

restoration cost.

### A.  Section 502(b)(1)

Proofs of claim are allowed claims "except to the extent that such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law . . . ."

11 U.S.C. § 502(b)(1).   Dewey Bellows argues that Texas's "one-satisfaction" rule, collateral

estoppel, res judicata, and the statute of limitations prevent the Petitioning Creditors from

enforcing this claim against the Debtor.  (ECF No. 30 at 16-26).

Texas's "one-satisfaction" rule prevents the Petitioning Creditors from collecting from

Debtor the costs to restore San Gregorio Ranch.  Therefore, the Petitioning Creditors' claims are

disallowed under § 502(b)(1) to the extent they seek to collect the costs of repairing and restoring the land.[9]

### B.  Texas's "One-Satisfaction" Rule

The property damage to San Gregorio Ranch represents a singly injury to the Petitioning Creditors.[10]  "The one-satisfaction rule provides that, when a claimant seeks recovery for the same injuries from multiple parties, the claimant is entitled to only one recovery for those injuries."  *Utts v. Short*, 81 S.W.3d 822 (Tex. 2002) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex. 1991)).

The fact that two different wrongs (trespass by the Debtor and negligence by Dewey Bellows) are both proximate causes of the injury (damage to San Gregorio Ranch) does not alter the outcome.  *See Stewart Title*, 822 S.W.2d at 7 ("There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule.").

The Petitioning Creditors deny that the "one-satisfaction rule" is applicable:

> The single injury rule does not bar this action because Petitioning Creditors are not seeking a double recovery for any single legal injury. Petitioning Creditors are seeking from Debtor segregated economic injuries of gross revenues for bad faith trespass for months 1-59 of the SWDA.  It is undisputed that Petitioning Creditors have not been compensated for these separate legal injuries.  Therefore the single injury rule cannot apply to this remedy.

> Petitioning Creditors are also asserting against Debtor alternative theories for recovery arising from or connected to the discharge.  Bellows

---

[9] By way of example, Apolinar Rodriguez's claim is disallowed in the amount of $15,000,000.00.  Apolinar Rodriguez's filed his Trespass and Property Damage claim in the amount of $15,333,086.43 ($15,000,00.00 for his share of the restoration cost and $333,086.43 for his share of the gross revenues).  (Claim 2-2, Ex. 1).  Apolinar Rodriguez's claim is thus reduced to $333,086.43, pending final resolution of these proceedings.

[10] The Debtor's twenty-year unlawful occupation of the Petitioning Creditors' land and the unlawful leasing of San Gregorio ranch are two injuries separate from the damage done to San Gregorio Ranch.

claims it has conclusively proven this must be a double recovery because in DC-07-0391 it paid $400,000 for negligently caused diminution in property value.

Bellows' argument has fatal problems. Petitioning Creditors' theories of recovery directly against Debtor include bad faith trespass, breach of fiduciary duty, and other. Injuries include unjustified enrichment, *i.e.* restitution of Debtor's unlawfully gained contractual benefits under the SWDA. These alternative legal theories and larger potential recoveries are different from the negligence and diminution in value claim awarded in DC-07-0391.

(ECF No. 99 at 22).[11]

The "one-satisfaction" rule does not apply to the separate legal injuries Debtor inflicted upon the Petitioning Creditors. Debtor's alleged "bad-faith" trespass is arguably the proximate cause of several injuries: (i) Debtor unlawfully occupied, and excluded the Petitioning Creditors from, San Gregorio Ranch for many years; (ii) Debtor unlawfully received monies from leasing San Gregorio Ranch to Dewey Bellows; and, (iii) Debtors' unlawful lease of the land resulted in pollution to San Gregorio Ranch.[12]   The Petitioning Creditors are correct that the "one-satisfaction" rule does not prohibit them from seeking to recover from Debtor damages for the separate injuries that they suffered.

The $75,000,000.00 in damages asserted by the Petitioning Creditors relates to a single injury, however—the pollution to San Gregorio Ranch. Therefore, the "one-satisfaction" rule prevents the Petitioning Creditors from collecting these damages from the estate to the extent they have already recovered from Dewey Bellows for the same injury.

As outlined above, the prepetition state court lawsuit between the Petitioning Creditors and Dewey Bellows resulted in a judgment against Dewey Bellows in the amount of $400,000.00

---

[11] The Petitioning Creditors use the phrase "single injury rule" instead of "one-satisfaction rule."

[12] This sentence is for illustrative purposes only. It is not meant as a finding that Debtor is responsible for these injuries or that this is an exclusive list of the injuries for which Debtor might be responsible.

for the damage to San Gregorio Ranch.  This is the amount the jury found to be equal to the diminution in the fair market value of San Gregorio Ranch as a result of the pollution (which resulted from the negligence of Dewey Bellows).

The Petitioning Creditors are not seeking to collect from the Debtor the amount of diminution in San Gregorio Ranch's fair market value.  The Petitioning Creditors together seek $75,000,000.00—the amount they assert it will cost to remove the polluted soil and replace it with soil of like productivity.

The Petitioning Creditors are correct that the "one-satisfaction" rule does not bar them from seeking damages from the Debtor for the same injury to the extent the Petitioning Creditors are entitled to a greater recovery from Debtor than Dewey Bellows.  *See Stewart Title*, 822 S.W.2d at 13 (although actual damages equaled $200,000, and plaintiff received $400,000 from another defendant in a pretrial settlement, the "one-satisfaction" rule did not prevent plaintiff from seeking an additional $200,000 from nonsettling defendant against whom actual damages of $200,000 could be trebled).

However, the Petitioning Creditors fail to explicitly articulate any legal theory entitling them to recover from Debtor the $75,000,000.00 in restoration costs.  As best as the Court can discern, the Petitioning Creditors put forth two different reasons for this conclusion, neither of which are sufficiently supported.

### 1.  Unlimited Restoration Costs for Injury to Land Resulting from a "Bad-Faith" Trespass

The Petitioning Creditors first appear to argue that restoration costs are a proper measure of damages for "bad-faith" trespass resulting in injury to land even if restoration costs greatly exceed the decrease in the land's fair market value.  (ECF No. 99 at 13).  In other words, the Petitioning Creditors argue that in addition to gross revenues obtained from the use of San

Gregorio Ranch and punitive damages, they are entitled to receive from Debtor the full amount of restoration costs ($75,000,000.00) even where the decrease in the land's fair market value ($400,000.00) is approximately 0.533% of the restoration costs.

The Petitioning Creditors' briefs fail to adequately support this legal conclusion. The normal amount of recovery for this type of damage to land is the diminution in the fair market value of the land. *See Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984) ("In a suit for permanent damage to land . . . the measure of damages is the difference in the market value of the land immediately before and immediately after the trespass."); *see also Primrose Operating Co., Inc. v. Senn*, 161 S.W.3d 258 (Tex. App.—Eastland 2005) ("If the cost to restore the land is excessive or not economically feasible, the injury may be deemed to be permanent. In the case of permanent injuries, the appropriate measure of damages is the diminution in fair market value.") (citing *North Ridge Corp. v. Walraven*, 957 S.W.2d 116 (Tex. App.—Eastland 1997)).

The Petitioning Creditors provide no support for their argument that the "bad-faith" nature of Debtor's actions means they are entitled to recover the restoration costs no matter the extent to which such costs exceed the diminution in fair market value.

The Court finds that a Texas court[13] would not require a "bad-faith" trespasser to pay for restoration costs where such costs exceed the diminution in fair market value by so great a degree. As outlined above, the proper measure of damages for permanent damages to land is the diminution of value.

---

[13] As there is no Texas Supreme Court case directly on point, this Court must rule as it believes the Texas Supreme Court would if this case were directly before it. *Dawkins v. White Products Corp.*, 443 F.2d 589 (5th Cir. 1971) ("It is, of course, much preferable for the federal court to apply state law as precisely articulated by a state court of highest jurisdiction. However, if no state court decision precisely on point is available to guide the federal court, we are compelled to decide to the best of our ability what the state court *would* hold if this case were *now* before it.") (emphasis in original).

The Petitioning Creditors argue that such a result is necessary in order to deter "bad-faith" trespassers.  The Court disagrees.

Texas law has measures to punish and deter "bad-faith" trespassers.  When a "bad-faith" trespasser extracts minerals from another's land, "the measure of damages is 'the value of the things mined at the time of severance without making deduction for the cost of labor and expenses incurred in committing the wrongful act . . . or for any value he may have added to the mineral by his labor.'"  *Mayfield v. De Benavides*, 693 S.W.2d 500 (Tex. Ct. App.—San Antonio 1985) (citing *Cage Brothers v. Whiteman*, 163 S.W.2d 638, 642 (Tex. 1942)).  Additionally, "[e]xemplary damages are recoverable for the tort of trespass if the trespass was committed maliciously."  *Wilen v. Falkenstein*, 191 S.W.3d 791, 800 (Tex. Ct. App.—Fort Worth) (citing *Williams v. Garnett*, 608 S.W.2d 794, 797 (Tex. Civ. App.—Waco 1980)).

### 2.    Removal and Remediation Provision as a part of "Gross Revenue" Unlawfully Obtained by Debtor

As outlined above, the SWDA contained a provision requiring Dewey Bellows to remove and replace all of the soil damaged as a result of their operations.  (ECF No. 47-4 at 12-13).

The Petitioning Creditors' second argument appears to be that because Debtor contracted for the right to require Dewey Bellows (under certain conditions) to pay for the cost to restore San Gregorio Ranch, that the theoretical value of this contractual right is revenue that may be recovered from Debtor.  (ECF No. 99 at 2) ("[T]his Court should grant Petitioning Creditors' partial motion for summary judgment for bad faith trespass.  Damages include: 1) gross revenues from use of the land and 2) the monetary value of all consideration granted Debtor in the SWDA."); (ECF No. 99 at 21) ("No legal distinction exists between the trespasser's wrongfully obtained benefits, regardless of whether they are manufactured lumber, oil brought to the surface, leather worked into boots, crops, cattle—or contractual remediation clauses.").  Again,

the Petitioning Creditors' briefs fail to adequately support this legal conclusion.

Alternatively, even if the Petitioning Creditors successfully demonstrated this to be the law, they miscalculate the value of this right (and thus the amount of their claim). Under no condition would the Petitioning Creditors be entitled to a $75,000,000.00 payout. At most, the Petitioning Creditors would be entitled to require Debtor (or Dewey Bellows if required to indemnify Debtor) to expend $75,000,000.00 on their behalf. The end result of such an expense would be that the fair market value of San Gregorio Ranch after cleanup would equal its fair market value prior to the pollution. The economic benefit of this effort to the Petitioning Creditors, as found by the state court jury, would be $400,000.00.

In other words, the Petitioning Creditors would have at most a $400,000.00 claim against the estate. As described above, however, Texas's "one-satisfaction" rule renders this claim unenforceable against the Debtor as the Petitioning Creditors have already recovered $400,000.00 from Dewey Bellows for the same injury.

### III.     Dewey Bellows's Gross Revenues

The remainder of the Trespass and Property Damage Claims are comprised of the Petitioning Creditors' respective share of Dewey Bellows's gross revenues under the SWDA. The Petitioning Creditors put the total gross revenues at $1,665,432.16 (with interest included). (Claim 2-2, Ex. 1). Dewey Bellows objects to this portion of the claims under § 502(b)(1) as well.

Dewey Bellows first argues that the statute of limitations renders these claims unenforceable against the Debtor in full. (ECF No. 99 at 27).

In the alternative, Dewey Bellows argues that these claims should be limited to the amount of revenue received by the Debtor directly (not Dewey Bellows's gross revenues).

Dewey Bellows argues that this is the proper measure of these claims under Texas law.  (ECF No. 99 at 28).  Also, Dewey Bellows believes that collateral estoppel bars the Petitioning Creditors' claims to the extent they are seeking revenues in excess of the amount received by the Debtor directly.

### A.  The Statute of Limitations

After the Original Partition Suit was dismissed on jurisdictional grounds, the Petitioning Creditors refiled the lawsuit (known as the Second Partition Suit) in July of 1998.  (ECF No. 47-2).[14]  The Petitioning Creditors filed a supplemental petition in the Second Partition Suit on August 16, 2010.  (ECF No. 47-3).  The supplemental petition specifically requests monies received by Debtor as lessor of San Gregorio Ranch.  (ECF No. 47-3 at 6).

The issue is whether these more specific demands for relief contained in the supplemental petition "relate back" to the original petition in the Second Partition Suit.  The applicable Texas statute reads as follows:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRACTICE & REMEDIES § 16.608.

Dewey Bellows's argument that § 16.068 is inapplicable makes little sense.  (ECF No.30 at 27).  In several different places, the Petitioning Creditors' original petition argues some version of the following:  Debtor is currently, and has been for many years, illegally occupying

---

[14] There was no statute of limitations issue with the original refiling because Texas law negates the application of the statute of limitations in certain situations if the lawsuit is refiled within sixty days in a court of proper jurisdiction. TEX. CIV. PRACTICE & REMEDIES § 16.604.

our land and profiting from its exploitation.  (ECF No. 47-2 at 4) ("Plaintiffs seek money had and received by Defendants in derogation of Plaintiffs' legal rights.") (ECF No. 47-3 at 6) ("[Plaintiffs request that the Court determine] the share of each of the rightful owners of any profits, plus interest, derived from the sale of any portions of real property in question on and after October 19, 1984, that is part of the estate.") ("[Plaintiffs request that the Court] determine the share of each of the rightful owners of any profits, plus interest, derived from the sale of any and all businesses that have been on any portion of the real property in question on and after October 19, 1984.").

In other words, in the original petition the Petitioning Creditors argue that they (and not the Debtor) are the rightful owners of this land and are entitled to recover the revenues related to the land's exploitation.  In the supplemental petition, the Petitioning Creditors specifically seek recovery of revenues obtained by Debtor (or Dewey Bellows, the third-party Debtor invited onto the land) as a result of the commercial saltwater operations conducted on the land pursuant to the SWDA.  Dewey Bellows's argument that these causes of action do not logically relate and are not part of the same transaction or occurrence is frivolous.

### B.  Damages Limited to Amounts Received by Debtor Directly

Dewey Bellow's argument in the alternative is that the Petitioning Creditors' claims should be disallowed to the extent they seek an amount in excess of what the Debtor collected directly under the SWDA as rent.  (ECF No. 30 at 28-30).  Dewey Bellows puts forth two reasons for this conclusion: (i) Texas law limits the Petitioning Creditors' claims to the amount of revenues received by the Debtor directly; (ii) collateral estoppel bars the Petitioning Creditors from seeking damages in excess of what the Debtor received directly.  (ECF No. 30 at 28, 30).

### 1.    Damages Limited by Texas Law

Dewey Bellows argues that even if Debtor is a "bad-faith" trespasser, the Petitioning Creditors may only receive the amount of revenues received by Debtor directly under the SWDA.  (ECF No. 30 at 28).

In Texas, a "bad-faith" trespasser who removes minerals from another's land is liable for the full value of those minerals.  *See Cage Bros. v. Whiteman*, 163 S.W.2d 638, 642 (Tex. 1942) ("When the wrongdoer commits the trespass willfully and with the knowledge that he is invading the rights of another, or under such circumstances as to charge him with knowledge of the character of his act, a different rule obtains.  In such cases the measure of damages is the value of the things mined at the time of severance without making deduction for the cost of labor and other expenses incurred in committing the wrongful act . . . ."); *see also Mayfield v. De Benavides*, 693 S.W.2d 500, 504 (Tex. App.—San Antonio 1985) (noting that the damages calculation for a "bad-faith" trespasser follows the rule set forth in *Cage Brothers*).  The "bad-faith" trespasser must pay damages in the amount of gross proceeds resulting from the trespass as opposed to net proceeds.  That is, the trespasser receives no credit for effort or money expended.

Dewey Bellows attempts to analogize this situation to mispaid royalties.  (ECF No. 30 at 29).  In that case, the rightful interest owner would be entitled to recover the amount of the mispaid royalty only.  *See Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 692 (Tex. 1986).  Under this theory, with the rent payments viewed as mispaid royalties, the Petitioning Creditors would be entitled to recover only the amount of rents received by the Debtor directly.

There does not appear to be a case directly on point.  The Court must rule as it believes the Texas Supreme Court would rule were it to address this issue.[15]

The Court finds that this situation is more analogous to a "bad-faith" trespasser who removes minerals from another's land.  If the Debtor removed minerals from San Gregorio Ranch on his own, or otherwise conducted operations on the land, the Debtor would be required to pay the Petitioning Creditors the gross proceeds from such operations without deductions for the Debtor's time and expense.

The rents essentially represent Debtor's net proceeds, not gross proceeds.  Only requiring the turnover of rents means that Debtor, even if found to be a "bad-faith" trespasser, faces reduced liability as a result of inviting a third-party onto the land to conduct the operations in his stead.  The fact that Dewey Bellows conducted the operations instead of Debtor himself does not alter the fact that Debtor allegedly trespassed upon the land in "bad-faith."  It is the potential "bad-faith" nature of the trespass that should determine the amount of damages, not whether the Debtor conducted the operations himself or invited a third-party onto the land.

### 2.    Collateral Estoppel

As set forth in its brief, Dewey Bellows's collateral estoppel argument appears to be directed primarily at the restoration cost component of the Petitioning Creditors' Trespass and Property Damage Claims.  (ECF No. 30 at 30) ("The court entered Judgment for one month of trespass damages. No other component of trespass damages was awarded in the Judgment such as additional damages for removal and replacement of soil or indemnity.").  It is difficult to

---

[15] As there is no Texas Supreme Court case directly on point, this Court must rule as it believes the Texas Supreme Court would if this case were directly before it. *Dawkins v. White Products Corp.*, 443 F.2d 589 (5th Cir. 1971) ("It is, of course, much preferable for the federal court to apply state law as precisely articulated by a state court of highest jurisdiction.  However, if no state court decision precisely on point is available to guide the federal court, we are compelled to decide to the best of our ability what the state court *would* hold if this case were *now* before it.") (emphasis in original).

discern Dewey Bellows's argument as to why collateral estoppel bars the recovery of damages in excess of the amounts received directly by the Debtor (except Dewey Bellows's conclusory statement that this is in fact correct).

The judgment to which Dewey Bellows refers comes from the state court lawsuit between the Petitioning Creditors and Dewey Bellows. The state court jury did find that Dewey Bellows was not trespasser.[16]  It is entirely unclear why Dewey Bellows believes that this means the Petitioning Creditors are collaterally estopped from arguing that the Debtor trespassed in "bad-faith" (and that therefore they are entitled to collect the gross proceeds from the Debtor).[17]

## IV.    Debtor as a "Bad-Faith" Trespasser

The Petitioning Creditors move for partial summary judgment, arguing that there is no genuine issue of fact that Debtor trespassed on their land in "bad-faith."  (ECF No. 53 at 3). They conclude, therefore, that as a matter of law they are entitled to liquidated damages in the amount of gross revenues for months 1-59 of the SWDA.[18]

As described above, the Petitioning Creditors may recover the amount of Dewey Bellows's gross revenues related to the SWDA if Debtor trespassed in bad faith.  Otherwise, the Petitioning Creditors will be limited to the amount of the rents received directly by Debtor. Therefore, whether Debtor was a "bad-faith" trespasser is a material fact.

---

[16] The Petitioning Creditors did receive a directed verdict for Dewey Bellows's gross revenues for month 60 of the SWDA, which would appear to indicate that the state court found as a matter of law that Dewey Bellows trespassed during this period of time.  (ECF No. 30 at 30, No. 46 at 29).

[17] It may be that Dewey Bellows means the Petitioning Creditors (and the Trustee) are collaterally estopped from arguing that Dewey Bellows must indemnify Debtor for these amounts.  Even if this is correct, the Petitioning Creditors certainly are not estopped from seeking these amounts from Debtor directly.

[18] In the prepetition state court lawsuit, the Petitioning Creditors received a directed verdict for the gross revenues of Dewey Bellows for month 60 of the SWDA.  (ECF No. 30 at 30, No. 46 at 29).

In order to be in good faith, a trespasser must have an honest and reasonable belief that he has superior title.   *See Mayfield v. de Benavides*, 693 S.W.2d 500 (Tex. App.—San Antonio 1985) (citing *Gulf Production Co. v. Spear*, 84 S.W.2d 452 (Tex. 1935)).   The Petitioning Creditors do not explain why Debtor lacked an honest and reasonable belief as to superior title prior to date on which the Petitioning Creditors were granted summary judgment in the title action.

In fact, there is significant evidence that Debtor had an honest and reasonable belief in his right to occupy the land.   In 1957, a probate court incorrectly construed Maria Lopez de Peña's will as devising to Santiago Rodriguez, Jr. a fee simple absolute in the land (as opposed to a fee simple subject to the Petitioning Creditors' executory interest).   *See Garza I*, 18 S.W.3d at 699. In other words, although it was later proven incorrect, as the result of this 1957 probate court order the land became part of Santiago Rodriguez, Jr.'s estate despite the fact that he died without lawful issue of his body.   Thus, when on April 24, 1987, Debtor obtained an order from the Starr County Probate Court that he and his mother (Olivia Rodriguez) were entitled to equal shares of Santiago Rodriguez, Jr.'s estate, this order (combined with the prior incorrect 1957 probate order) meant that Debtor obtained a court order indicating that he was entitled to the land.   (ECF No. 72-3 at 3).

The Petitioning Creditors argue that this is immaterial because they brought a contemporaneous action against Debtor to determine title of the land.   The Petitioning Creditors cite *NRG Exploration, Inc. v. Rauch*, 905 S.W.2d 405, 410 (Tex. App.—Austin 1995) for this conclusion.   (ECF No. 53 at 3).   In *NRG Exploration*, a favorable temporary injunction did not protect a defendant from later being found to be a "bad-faith" trespasser. 905 S.W.2d at 409.

27 / 28

The court order obtained by the Debtor is materially distinguishable.   A temporary injunction is meant to maintain the status quo pending final adjudication.  The orders received by Debtor were not temporary.  Although the 1957 probate order was incorrect, it combined with the 1987 Starr County Probate Court order indicated Debtor had the right to occupy the land.

Due to these facts, it is quite clear that the Petitioning Creditors are not entitled to summary judgment on the issue of whether Debtor trespassed in bad faith.   This matter will be reserved for trial.

Dewey Bellows did not move for summary judgment on this issue.  Even if they had, there remain important issues of material fact that the Court is unable to determine from the parties' respective briefs.

## Conclusion

The Court will issue an Order in accordance with this Memorandum Opinion.

SIGNED **November 16, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE