

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
06/05/2013

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 10-70606** |
| **GABRIEL G. RODRIGUEZ** | § | **CHAPTER 7** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |

| | | |
|---|---|---|
| **MICHAEL SCHMIDT** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 11-07012** |
| | § | |
| **APOLINAR RODRIGUEZ**, *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Dewey Bellows's Motion to Compel, (ECF No. 110), is granted in part and denied in part.

The motion is granted as to the following:

- The Petitioning Creditors must turn over all documents corresponding to Bellows's Requests for Production No. 15 and No. 16;

- Harlin C. Womble, Jr. must appear for a deposition and answer Questions 1-19, 22-38, 44-49, 52-54, 56-65, 67-72, and 74-92 listed in ECF No. 110-4;

- Filiberto A. Garza must appear for a deposition and answer Questions 3, 5, and 6 listed in ECF No. 110-5; and,

- Craig Smith must respond to Questions 1-5 and 7-8 listed in ECF No. 110-3.

The motion is denied as to the following:

- Questions 20-21, 39-43, 50-51, 55, 66, 73, and 93-102 from Harlin C. Womble, Jr.'s deposition, listed on ECF No. 110-4;

- Questions 1-2, 4, and 7 from Filiberto A. Garza's deposition, listed at ECF No. 110-5;

- Questions 6 and 9-13 from Craig Smith's deposition, listed at ECF No. 110-3.

### Background

A complete description of this adversary proceeding's factual background may be found in prior memorandum opinions. (ECF Nos. 79, 102, 129).

Discovery disputes have repeatedly marred this adversary proceeding. Dewey Bellows filed this Motion to Compel on September 24, 2012. (ECF No. 110). The Petitioning Creditors[1] responded on October 11, 2012. (ECF No. 123).

The Court issued an opinion and order on November 16, 2012 addressing competing motions for summary judgment. (ECF Nos. 128, 129). The opinion mooted certain issues in this discovery dispute. At a hearing on December 6, 2012, the parties agreed that only the following issues remained alive: (i) Dewey Bellows's Requests for Production Nos. 15 and 16; (ii) privilege claims from Harlin Womble's deposition; (iii) privilege claims from Filiberto A. Garza's deposition; and, (iv) privilege claims from Craig Smith's deposition.[2]

After a hearing, the Court announced a ruling as to a majority of the disputed issues. (ECF No. 152). The parties were to submit further briefing on how the privilege issues were affected by the fact that Womble (one of the Petitioning Creditors' attorneys) signed the proofs of claim.

---

[1] The Petitioning Creditors are Apolinar Rodriguez, Petra Rodriguez, Maria Lilia G. Henkel, Israel Guerra, Jr., Filiberto A. Garza, Imelda Saenz, Mario Corona, Homera Corona, Blanca Corono Garza. These nine individuals filed the involuntary bankruptcy petition against Gabriel G. Rodriguez. The Petitioning Creditors and Gabriel Rodriguez engaged in a long, protracted dispute over several parcels of land. The land dispute is described in greater detail in the November 16, 2012 Memorandum Opinion, (ECF No. 129).

[2] The live issues were identified by the related paragraph numbers from Dewey Bellows's Motion to Compel. The live issues correspond to paragraphs 11 (subparts 15-16 only), 18-22, 23-24, and 25-28, respectively. (ECF No. 110).

This Memorandum Opinion describes the Court's reasoning for the initial rulings of February 25, 2013, as well as the Court's more recent rulings in response to the parties' supplemental briefing.

### Analysis

**I. Governing Law**

The Federal Rules of Evidence provide that state privilege law governs in civil actions and proceedings where state law provides the rule of decision, except as otherwise required by the Constitution, an Act of Congress, or rules prescribed by the Supreme Court pursuant to its statutory authority. FED R. EVID. 501.

The Petitioning Creditors' proofs of claim allege state law tort causes of action against the Debtor.[3]  The Trustee's causes of action against Dewey Bellows are for state law breach of contract and indemnity brought in the same adversary proceeding. Because Texas law provides the rules of decision, Texas privilege law governs except in one of the situations listed in the previous paragraph.

One example relevant to this discovery dispute is Rule 26 of the Federal Rules of Civil Procedure.[4]  This is a rule prescribed by the Supreme Court pursuant to its statutory authority. Rule 26 codifies the work-product privilege and it, not the Texas work-product privilege, governs even though Texas law provides the rules of decision. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695 (10th Cir. 1998); *United Coal Cos. v. Powell Const. Co.*,

---

[3] The objection to Petitioning Creditors' proofs of claim #11-19 has now been consolidated with this adversary proceeding.

[4] Rule 26 is made applicable in bankruptcy adversary proceedings by Rule 7026 of the Federal Rules of Bankruptcy Procedure.

839 F.2d 958 (3d Cir. 1988) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity case[s], by a uniform standard embodied in [Rule] 26(b)(3) . . . .").

The parties dispute the applicability of the attorney-client and work-product privileges. The Texas attorney-client privilege and the federal work-product privilege govern these issues.

## II. Requests for Production

Dewey Bellows's Request for Production No. 15 requests: "All assignments, deed or transfers of all or a portion of the Ranch by any of the Petitioning creditors to any one including their attorneys." (ECF No. 110-1 at 11).

The Petitioning Creditors' written response to the Requests for Production stated: "Objection. Relevance. Not calculated to lead to admissible evidence. Subject to that objection, all responsive documents will be made available for viewing and copying in the manner that they are kept, in the offices of Jordan, Hyden, Womble, Culbreth & Holzer, P.C., at an agreeable time and date." (ECF No. 110-1 at 11).

The Petitioning Creditors' relevance objection to Bellows's Request for Production No. 15 is overruled. The threshold for relevance is low. *See United States v. Jones*, 664 F.3d 966, 975 (5th Cir. 2011) (citing *United States v. Frick*, 588 F.2d 531, 537 (5th Cir. 1979)); FED. R. EVID. 401 ("any tendency to make a fact more or less probable than it would be without the evidence"). This evidence is relevant for numerous reasons. The most obvious is that the identity of the owners of the allegedly polluted land is relevant in an adversary proceeding related to proofs of claim asserting debts owed to the land's owners. Dewey Bellows's Motion to Compel is granted as to Bellows's Request for Production No. 15.

Dewey Bellows's Request for Production No. 16 requests: "All contingency fee agreements between the Petitioning Creditors and their attorneys related to the Bellows State Court suit or the Bellows Adversary."

The Petitioning Creditors' written response to the Requests for Production stated: "Objection. Not calculated to lead to admissible evidence.  Subject to that objection, all responsive documents will be made available for viewing and copying in the manner that they are kept, in the offices of Jordan, Hyden, Womble, Culbreth & Holzer, P.C., at an agreeable time and date." (ECF No. 110-1 at 10).[5]

The Petitioning Creditors' relevance objection to Dewey Bellows's Request for Production No. 16 is overruled.  Dewey Bellow's Motion to Compel is granted as to Dewey Bellows's Request for Production No. 16.  (ECF No. 110 at 6).

### III. Harlin C. Womble, Jr.'s Deposition

Harlin C. Womble, Jr. is one of the Petitioning Creditors' attorneys for this adversary proceeding. (ECF No. 123 at 6).  Dewey Bellows deposed Womble on July 12, 2012.  Womble objected to and refused to answer 102 questions during the deposition, on the grounds that this was necessary to protect a privilege.  Dewey Bellows requests that Womble be compelled to appear for another deposition and to respond to those questions.

Valid objections do not necessarily constitute valid reasons for refusing to answer deposition questions.  A party may only refuse to answer questions at an oral deposition when it is necessary to: (i) protect a privilege; (ii) enforce a limitation ordered by the Court; or, (iii) present a motion under Rule 30(d)(3).  FED. R. CIV. P. 30(c)(2).

---

[5] The Court interprets this statement as constituting a relevance objection as well.

The disputed questions[6] fall into seven general categories and will be addressed by category:

- Category A—Questions Regarding Privileged Communications
- Category B—Questions Regarding Womble's Activities Prior to Filing the Proofs of Claim
- Category C—Questions Regarding the Factual Basis for the Proofs of Claim
- Category D—Questions Regarding Documents Used Offensively
- Category E—Questions Disregarded
- Category F—Questions Regarding Womble's Knowledge of Certain Facts or Events
- Category G—Questions Regarding the Fee Arrangement and Other Nonprivileged Aspects of the Attorney-Client Relationship

### a. Questions Regarding Privileged Communications

Category A questions inquire as to communications normally covered by the attorney-client privilege under Texas law.

The Texas Rules of Evidence incorporate the attorney-client privilege: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." TEX. R. EVID. 503(b). This privilege protects not just conversations between the client and the lawyer directly, but also conversations involving representatives of either the client or the lawyer, as well as conversations with lawyers representing another party (concerning a matter of common interest between them). TEX. R. EVID. 503(b).

Although Womble's refusal to answer these questions would normally be appropriate, here Womble signed the Petitioning Creditors' proofs of claim. Dewey Bellows argues that this makes Womble a fact witness as to the allegations contained in the Petitioning Creditors' proofs

---

[6] The individual questions may be found in the Appendix attached to this Memorandum Opinion.

of claim. (ECF No. 40 at 2).[7] The Court agrees and finds that the attorney-client privilege is waived.[8]

### i. Womble as Fact Witness

Signing a proof of claim is an assertion of personal knowledge of the facts alleged in the proof of claim. (*See, e.g.*, Claims' Register 2-2) ("I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief."). Although the phrase "to the best of my knowledge, information, and reasonable belief" is the standard governing complaints, there is an important difference between filing a complaint and filing a proof of claim. A complaint is not prima facie evidence of the facts asserted therein. *Am. Cancer Soc'y v. Cook*, 675 F.3d 524 (5th Cir. 2012) ("[A] complaint is not evidence of the charges contained in it.") (quoting *Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995)). A properly filed proof of claim is prima facie evidence as to the claim's validity (thus, as to the facts alleged therein). FED. R. BANKR. P. 3001(f).

In *Comp. Network Corp. v. Spohler*, the Court addressed an analogous situation, which helps to distinguish between an attorney who signs a proof of claim (or performs a similar act) and an attorney who files a complaint. 95 F.R.D. 500 (D.D.C. 1982). In *Spohler*, the plaintiffs moved to compel Schott (both a corporate officer and general counsel for two corporate defendants) to answer deposition questions related to the factual basis of an affidavit executed by Schott and attached to defendants' opposition to plaintiff's motion for expedited discovery. 95 F.R.D. at 501. The affidavit touched on the merits of the litigation. 95 F.R.D. at 501. The

---

[7] This issue originally arose when Womble and Smith moved to quash their depositions. (ECF Nos. 31, 33). The Court did not rule on the issue at the time, allowing the depositions to go forward without prejudice to any claims of privilege. (ECF No. 41).

[8] Womble alleges, and no one disputes, that the Petitioning Creditors consented to having Womble sign the proofs of claim. (ECF No. 169 at 6). The Petitioning Creditors, and not Womble, are the privilege holders. This consent constitutes the waiver.

defendants sought a protective order, arguing that the motion to compel sought disclosure of privileged material. 95 F.R.D. at 501.

The district court affirmed the magistrate judge's decision that Schott must answer the questions regarding the factual basis for the assertions made in the affidavit. 95 F.R.D. at 500. The parties disputed whether Schott filed the affidavit in his corporate officer capacity or his general counsel capacity. 95 F.R.D. at 502. Defendants argued that Schott filed the affidavit in his general counsel capacity, and that therefore these matters were protected by the attorney-client privilege. 95 F.R.D. at 500-02.

The court ruled that, whether Schott filed the affidavit in his corporate officer or general counsel, the attorney-client privilege was inapplicable. The Court distinguished the act of filing an affidavit from the mere filing of a complaint:

> Submitting an affidavit was far different than a lawyer filing an answer to a complaint or a memorandum of points and authorities in which he weaves in factual representations with legal arguments. Here Mr. Schott was being a factual witness concerning fact issues which goes to the heart of this legal controversy. He cannot foreclose discovery of the factual basis for his factual representations in the affidavit anymore than he could take the witness stand and testify on direct examination to the factual matters set forth in his affidavit, and then preclude cross-examination by invoking the attorney-client privilege.

95 F.R.D. at 502. The situation here is analogous. The proofs of claim signed by Womble, like Schott's affidavit, constitute evidence going towards the merits of this litigation. By signing the proofs of claim, Womble became a fact witness as to the allegations contained in the proof of claim.

This results in waiver of otherwise applicable privileges.

## ii.  Waiver by Offensive Use

Texas privilege law governs as to the attorney-client privilege, including questions of waiver.[9]  The Texas Supreme Court held that the doctrine of waiver by offensive use applies to the attorney-client privilege in *Republic Ins. Co. v. Davis*, 856 S.W.2d 158 (Tex. 1993).  There are three elements[10] for the theory to apply: (i) the party asserting the privilege must be seeking affirmative relief;  (ii) the privileged information must be outcome determinative; and, (iii) disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence.  These elements are satisfied here.

The petitioning creditors do not dispute that they seek "affirmative relief."  (ECF No. 169 at 8).

In arguing that the privileged information is not outcome determinative, the Petitioning Creditors state the following:

> In the instant case, evidence shows a final judgment from a Texas Court holding Petitioning creditors have title. No communications between Petitioning Creditors and counsel leading up to and concerning the title judgment are "outcome determinative." The outcome of the title dispute has already been resolved, and with it almost every liability issue. Only damages are disputed.

(ECF No. 169 at 8).  The Court disagrees with this analysis of the outcome determinative element.

As noted above, a properly filed proof of claim is prima facie evidence as to the claim's validity.  FED. R. BANKR. P. 3001(f).  A proof of claim is deemed allowed unless an objection is

---

[9] Where the issue of waiver is substantive (e.g., placing the privileged communications in controversy) as opposed to procedural (e.g., waiver resulting from failure to complete a privilege log), state waiver law should govern where state privilege law applies. *See Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1477 (8th Cir. 1997).

[10] Although labeled as "factors," they are in fact elements.  856 S.W.2d at 163 ("If any one of these requirements is lacking, the trial court must uphold the privilege.").

filed. 11 U.S.C. § 502(a). The burden is on an objecting party-in-interest to rebut the factual assertions contained in a proof of claim filed in accordance with Rule 3001. FED. R. BANKR. P. 3001(f). Accordingly, the factual assertions contained in the proofs of claim are outcome determinative.

The third element is whether disclosure of the privileged information is the only means by which the aggrieved party may obtain the evidence. The Petitioning Creditors argue that certain evidence (for example, the method of calculating remediation damages) may be found elsewhere and by other methods of discovery. (ECF No. 169 at 8). This argument confuses the issue of what "evidence" is at issue. The proofs of claim contain the following factual assertions by Womble: (i) personal knowledge that the debtor is liable to the petitioning creditors for bad faith trespass (and other torts); and, (ii) personal knowledge that the damages to the petitioning creditors are in the amounts asserted (calculated in accordance with the attachment to the proofs of claim). At the time of the filing of the proof of claim, these limited factual assertions (combined with the damages calculation, which was neither self-explanatory nor self-authenticating) constituted the entirety of the evidence in support of the proofs of claim. (Claims' Register 2-1).[11] When questioned as to the basis for his factual assertions, Womble objected on the grounds of privilege. It is clear that the only means by which the the objecting party-in-interest may obtain this evidence is by making inquiry of Womble (that is, the evidence initially used by the Petitioning Creditors in support of their proofs of claim).

---

[11] This is not a criticism; it is all that was required.

The following questions[12] fit into this category, but relate to the proofs of claim and are therefore not privileged: 1-3, 8-10, 26-27, 34-35, 47-48, 56-57, and 61-62.  Dewey Bellows's Motion to Compel is granted as to these questions.[13]

The following questions fit into this category but do not relate to the proofs of claim, and are therefore privileged: 40-42 and 73.  Dewey Bellows's Motion to Compel is denied as to these questions.

### b.  Questions Regarding Womble's Activities Prior to Filing the Proofs of Claim

Category B questions inquire as to Womble's activities prior to filing the proofs of claim.  Examples include questions asking about documents he reviewed,[14] the people with whom he spoke,[15] or Womble's understanding as to the law.[16]

Federal Rule of Procedure 26(b)(3) (the work-product privilege) protects materials meeting the following requirements: (i) documents and tangible things; (ii) prepared in anticipation of litigation or for trial; (iii) that were prepared by or for another party or by or for that party's representative.  Although Rule 26(b)(3) only references tangible materials, the Supreme Court case of *Hickman v. Taylor* continues to protect intangible materials as well.

---

[12] The numbering found on Exhibit D to Bellows's Motion to Compel, (ECF No. 110-4), will be used.  The number appears where Womble refused to answer.  The corresponding question appears in the immediately preceding lines.  As an example, Womble invoked the privilege for the 29th time on page 22 of the transcript, beginning with line 12.  (ECF No. 110-4 at 30).  Question 29 immediately precedes it, beginning at line 8 on page 22 of the transcript.  (ECF No. 110-4 at 30).

[13] A few questions fall into multiple categories.  Once a question falls into a nonprivileged category it will not be addressed in a subsequent category.

[14] Question 12: "Did you review any documents before you filed the 75 million dollar proof of claim."  (ECF No. 110-4 at 24).

[15] Question 29: "With respect to the source of the spill on San Gregorio Ranch, did you talk to anyone other than the petitioning creditors, Craig Smith, and Mr. Daniel Airey.?"

[16] Question 96: "With respect to the joint defense that's been asserted in this – privileged in this case, is there any limitation on that joint defense privilege asserted in this lawsuit that you're aware of."  (ECF No. 110-4 at 53).

*Nguyen v. Excel Corp.*, 197 F.3d 200, 210, 210 n.34 (5th Cir. 1999) (noting that attorney's mental impressions and opinions are inviolate) (citing 6 MOORE'S FED'L PRACTICE § 26.70 [2][c], at 26-209 ("[C]ourts have protected an attorney's thoughts, mental processes, strategy, and opinions from disclosure, regardless of the discovery method employed. . . . Courts have continued to apply *Hickman* to prevent circumventing the work product doctrine by attempting to elicit an attorney's thought processes through depositions or interrogatories.")).

Refusal to answer these questions on the grounds of the work product privilege is normally appropriate.[17]  An attorney's "mental impressions, conclusions, opinions, or legal theories" are protected as intangible work-product. *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763 (7th Cir. 2006).  The identities of the individuals with whom Womble spoke are similarly protected under normal circumstances.

However, the circumstances are not normal.  Womble is no longer merely the Petitioning Creditors' attorney.  Womble signed the proofs of claim, thereby making certain factual assertions and becoming a fact witness.  As a result, questions which would normally be an improper intrusion into areas protected by the work-product privilege may now be proper questions seeking the basis for factual assertions made by a fact witness. *See Spohler*, 95 F.R.D. at 502 ("[Schott] cannot foreclose discovery of the factual basis for his factual representations in his affidavit . . . .").  Womble may not shield from discovery via the work-product privilege the basis for factual assertions made as a fact witness.

The Court concludes that Womble must respond to inquiries about the factual basis of the proof of claim.  The work product and attorney client privileges are waived as to the facts alleged in the proof of claim.  The Court further holds that Womble need not respond to inquiries about

---

[17] The attorney-client privilege may also be applicable as to certain questions.

the legal basis of the proof of claim. Womble's legal opinions, legal research and thought are protected by the work product privilege.

Using that framework, the following questions are not privileged: 11-12, 18-19, 23-25, 28-29, 36-37, 44-46, 49, 52-53, 58-60, and 63-64. Dewey Bellows's Motion to Compel is granted as to these questions.

The following questions are privileged: 43, 55, and 93-102. Dewey Bellows's Motion to Compel is denied as to these questions.

### c. Questions Regarding the Factual Basis for the Proofs of Claims

Category C questions, which directly inquire into the factual basis for the proofs of claim,[18] would normally not be appropriate for a deposition of an opposing party's attorney. However, by signing the proofs of claim Womble became a fact witness to the facts alleged within. As with the two previous categories, this resulted in waiver of the applicable privileges for the same reasons discussed above.

The following questions fall in this category: 4-7, 30-33, and 54. Dewey Bellows's Motion to Compel is granted as to these questions.

### d. Questions Regarding Documents Used Offensively

Category D questions inquire as to documents used in support of the Petitioning Creditors' claims.[19] Womble's refusal to answer these questions on the grounds of work-product privilege was inappropriate.[20]

---

[18] Question 30: "What is the element of damage in the proofs of claim for the spill?" (ECF No. 110-4 at 26). These questions are in many ways similar to certain questions in Category B.

[19] Question 82: "[C]an you identify the basis for the $1,665,432.16 [listed on a document attached as an exhibit to the Petitioning Creditors' proofs of claim]?" (ECF No. 110-4 at 48).

[20] The Court is assuming that the Petitioning Creditors' refusal was based on the work-product privilege. If the Petitioning Creditors' refusal was based on the attorney-client privilege, the Court similarly overrules the objection under Texas's "waiver by offensive use" doctrine discussed above.

Parties cannot use documents as testimonial evidence in support and simultaneously object that the document is protected by the work-product privilege. An example in this case is the document the Petitioning Creditors attached to Proofs of Claim Nos. 2-10 ("Exhibit 1") asserting $76,665,432.16 in total damages (calculated by adding the costs of removing the polluted soil to Dewey Bellows's gross receipts over a period of years). (Claim's Register No. 2-1).[21] This total amount is then broken down as to each Petitioning Creditor in relation to the percentage of land owned. (Claim's Register No. 2-1). By attaching the damages calculation to the proofs of claim, the document is being used as testimonial evidence.

The Court recognizes the difficulty in this ruling. Certain portions of the damages calculation may require a determination of law. The highly competent counsel on both sides of this dispute should be able to sort through this issue. Womble must answer questions concerning factual allegations in the proof of claim; he is not required to respond to questions concerning legal theories. If the parties have difficulty implementing this ruling, further motions may be filed.

The Petitioning Creditors, via their attorney Womble, may not seek protection from the work-product privilege for a document used in a testimonial manner. *See In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988) ("The signal feature of the implied waiver in [*United States v. Nobles*, 422 U.S. 225 (1975)], and in the one at bar, is the attempt to make testimonial use of work-product materials."); *see also Deep Nines, Inc. v. McAfee, Inc.*, 2008 U.S. Dist. LEXIS 1215181 at *15 (E.D. Tex. Mar. 28, 2008) ("[C]ourts have found waiver in the case where a party 'deliberately disclosed work-product in order to gain a tactical advantage and in instances where a party made testimonial use of work-product materials and then attempt to invoke the

---

[21] Although it is listed as "Exhibit 1" when attached to the proofs of claim, during the deposition it was referred to as "Exhibit 2."

work-product doctrine to avoid cross-examination.") (quoting *Varel v. Banc One Capital Partners, Inc.*, 1997 U.S. Dist. LEXIS 4711 at *3 (N.D. Tex. Feb. 25, 1997)).

The following questions fit into this category: 13-17 and 82-85. Dewey Bellows's Motion to Compel is granted as to these questions.

### e.  Questions Disregarded

Category E contains certain questions that cannot be properly analyzed and therefore will be disregarded. Category E questions: (i) relate to issues that are moot[22]; or (ii) discuss persons or documents not sufficiently identified.[23]

The following questions fall into this category: 20-21, and 66. Dewey Bellows's Motion to Compel is denied as to these questions.

### f.  Questions Regarding Womble's Knowledge of Certain Facts or Events

Category F consists of questions about whether Womble was aware of certain facts or events at relevant time periods.[24] Under normal circumstances the Court would sustain a refusal to answer on the grounds of the work-product privilege or the attorney-client privilege.

Once again, as explained above, these are not normal circumstances. The privilege is waived where a question in this category relates to a proof of claim. Questions 22 and 38 fit this description. Dewey Bellows's Motion to Compel is granted as to these questions.

---

[22] Question 66: "All right. The current discovery responses have not been verified. Are the petitioning creditors going to provide a verification with respect to their interrogatory responses?" (ECF No. 110-4 at 11). Dewey Bellows's Motion to Compel complained of the Petitioning Creditors' failure to verify their interrogatory responses. (ECF No. 110 at 4). At the December 6 hearing, the parties agreed that this issue was no longer live.

[23] This assumes that the person's identity is necessary to analyzing the claimed privilege.

[24] An example is Question 38: "At the time that you filed the proofs of claim, were you aware that Craig Smith owned any portion of the San Gregorio Ranch as set forth on Exhibit 2." (ECF No. 110-4 at 33).

Where the question does not relate to a proof of claim, the applicable privilege is not waived. Questions 39 and 50-51 match this description.   Dewey Bellows's Motion to Compel is denied as to these questions.

### g.   Questions Regarding the Fee Arrangement and Other Nonprivileged Aspects of the Attorney-Client Relationship

Womble repeatedly objected to and refused to answer[25] questions asking about his fee arrangement with the Petitioning Creditors,[26] the legal services he provided for them,[27] whether other individuals represented the Petitioning Creditors,[28] and fee arrangements with other counsel or parties aligned with the Petitioning Creditors.[29]

Womble's refusal to answer Category G questions on the grounds of attorney-client privilege was improper.   The Texas attorney-client privilege does not protect this type of information. *See Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 634 (Tex. Ct. App.—Houston 1988) ("Under the great weight of authority, information concerning the factual circumstances surrounding the attorney-client relationship has no privilege, at least as long as disclosure does not threaten to reveal the substance of any confidential communications. Therefore, the attorney-client privilege does not encompass such nonconfidential matters as the

---

[25] The specific grounds for these objections are not clearly stated on the transcript.  The Petitioning Creditors' response to Dewey Bellows's Motion to Compel objects to the questions posed to Womble on the grounds of relevance, attorney-client privilege, and work product privilege.  As noted above, irrelevance is a proper ground for objection but not for refusing to answer questions during an oral deposition.  The work-product privilege is inapplicable.  Womble's refusal to answer these questions appears to be based on attorney-client privilege.

[26] Question 68: "Are you—Your contract with the petitioning creditors in this case, is it a contingent fee agreement?" (ECF No. 110-4 at 44).

[27] Question 72: "Did you assist, in any way, in the preparation of the responses to discovery in this lawsuit?" (ECF No. 110-4 at 45).

[28] Question 71: "Does Mr. Smith have a fee agreement with the petitioning creditors with respect to this lawsuit." (ECF No. 110-4 at 45).

[29] Question 69: "Is there a fee sharing arrangement between your offices and Mr. Smith with respect to the—any contingent fee arrangement in this lawsuit." (ECF No. 110-4 at 45).

terms and conditions of an attorney's employment, the purposes for which an attorney has been engaged, or any of the external trappings of the relationship between the parties."); *see also* Goode, Wellborn and Sharlot, 2A COURTROOM HANDBOOK ON TEXAS EVIDENCE 456 (2012) ("Texas courts have followed the widely accepted common-law rule that the identity of the client and fee arrangements ordinarily are not shielded from disclosure.").

The following questions fit into this category: 65, 67-72, 74-81, and 86-92.  Dewey Bellows's Motion to Compel is granted as to these questions.

### IV. Filiberto A. Garza's Deposition

Filiberto A. Garza is one of the Petitioning Creditors in the involuntary bankruptcy of Gabriel G. Rodriguez.  During his deposition Garza objected to and refused to answer 7 questions, alleging that this was necessary in order to protect a privilege. (ECF No. 110-5).[30] Dewey Bellows requests that the Court enter an order compelling Garza to respond to these questions. (ECF No. 110 at 7).  In their response, the Petitioning Creditors asserted that Garza's refusal to answer was proper as it was necessary to protect privileged confidential attorney-client communications. (ECF No. 123 at 8).

Questions 1 and 2 inquire as to the substance of privileged confidential attorney-client communications.  Dewey Bellows's Motion to Compel is denied as to these questions.

Question 3 asks about the substance of Garza's claim, facts that have been placed into issue in this adversary proceeding by the filing of the proof of claim.  Dewey Bellows's Motion to Compel is granted as to Question 3.

Questions 4 and 7 do not directly inquire as to the substance of privileged attorney-client communications. The answer to those questions, however, will necessarily reveal the content of

---

[30] The Court will use the enumeration provided by Dewey Bellows in its Motion to Compel, (ECF No. 110-5).

confidential attorney-client communications. Therefore, the Court finds that Garza's refusal to answer these questions was proper as it was necessary to preserve attorney-client privilege. *See* Goode, Wellborn and Sharlot, 2A COURTROOM HANDBOOK ON TEXAS EVIDENCE p.456, (2012) (citing *Montgomery County v. Microvote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (billing records not discoverable where disclosure would essentially reveal the substance of confidential communications by revealing the nature of services performed) (applying Pennsylvania privilege law)). Dewey Bellows's Motion to Compel is denied as to these questions.

Question 5 is similar in substance to Questions 4 and 7. However, the Court finds that the answer will not necessarily reveal the content of attorney-client communications. Therefore, Garza's refusal to answer was improper. Dewey Bellows's Motion to Compel is granted as to this Question 5.

Womble objected to Question 6 on grounds of relevance. Yet, Womble instructed his client not to answer the question. This objection is not proper grounds for refusing to answer the question as it does not fit into one of the three categories enumerated in Rule 30. Dewey Bellows's Motion to Compel is granted as to Question 6.

### V. Craig Smith's Deposition

Craig Smith is one of the attorneys of record for the Petitioning Creditors in this adversary proceeding and has represented them in several related state court cases. (ECF No. 123 at 7). Craig Smith objected to and refused to answer 13 questions in his deposition, on the grounds that refusal was necessary to protect a privilege. (ECF No. 110-3).[31] Dewey Bellows requests an order compelling Smith to answer the questions. (ECF No. 110 at 7). In their response to Dewey Bellows's Motion to Compel, the Petitioning Creditors again assert that

---

[31] Again, the numeration is that found with Dewey Bellows's Motion to Compel, (ECF No. 110-3).

refusal was necessary to protect confidential attorney-client communications or to product materials covered by the work-product privilege. (ECF No. 123 at 7).[32]

Questions 1-5 and 7-8 relate to fee arrangements or other nonprivileged information surrounding the attorney-client relationship. As explained above, this information is not privileged. Dewey Bellows's Motion to Compel is granted as to these questions.

Questions 6 and 9 inquire as to the substance of a confidential attorney-client communication. Dewey Bellows's Motion to Compel is denied as to Questions 6 and 9.

Questions 10-11 and 13 inquire as to Smith's legal theories, opinions, or strategies. As explained above, this information is protected as intangible work product. Dewey Bellows's Motion to Compel is denied as to Questions 10-11 and 13.

Question 12 inquires as to parties who are not sufficiently identified. The parties' identities are material. Dewey Bellows's Motion to Compel is denied as to Question 12.

### Conclusion

The Court will enter a separate order in accordance with this Memorandum Opinion.

SIGNED **June 5, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[32] The Court does not believe that the waiver issue affects any of the questions in dispute from Craig Smith's deposition.

Case 11-7012   Document 110-4   Filed in TXSB on 09/24/2012   Page 1 of 55

## Exhibit "D"- Excerpts from Deposition of Harlin C. Womble, Jr.

    1)       Page 12, Lines 10-18, and 24-25:

10 Q Thank you. Now, the proofs of claim, Exhibit
11 1, do -- you signed those; is that correct?
12 A I did.
13 Q Okay. In doing so, did you obtain
14 authorization to sign those by talking to each of the
15 petitioning creditors?
16 **MR. HOLZER: Objection, privileged.**
17 **Instruct the witness not to answer the question about**
18 **communications with his clients.**

24 Q (By Mr. Anderson) Did you talk to your
25 clients before you filed the proofs of claim?

    2)       Page 13, Lines 1-6 and 12-16:

1 A No.
2 Q Who did you obtain -- Who gave you permission
3 to file the proofs of claims if you did not talk to your
4 clients?
5 **MR. HOLZER: Objection, privilege. I'm**
6 **going to instruct the witness not to answer the question.**

12 Q (By Mr. Anderson) Did you talk to Craig
13 Smith before you filed the proofs of claim?
14 **MR. HOLZER: Objection, privileged. I**
15 **instruct the witness not to answer the question, the same**
16 **explanation.**

    3)       Page 15, Lines 4-7 and 11-19:

4 Q (By Mr. Anderson) Is there a damage model
5 associated with the trespass claim?
6 **MR. HOLZER: Objection. Privileged and**
7 **I'm instructing the witness not to answer the question.**

11 Q Is the damage model for the trespass the cost
12 of removal and replacement of the dirt?
13 **MR. HOLZER: Objection, privileged. I'm**
14 **going to instruct the witness not to answer the question.**
15 Q How is the -- I'm going to rephrase that

1



16 question for you. Is the damage model, in part, for the
17 cost of removal and replacement of the dirt?
18 **MR. HOLZER: Objection, privileged,**
19 **instruct the witness not to answer the question.**

4)        Page 16, Lines 3-12:

3 Q In the proof of claim, you sought damages, in
4 part, in the amount of $76,665,432.16?
5 MR. HOLZER: Objection.
6 Q Correct?
7 A Yes.
8 Q Is that damage -- Is that number based upon
9 the cost of removal and replacement of the dirt on the San
10 Gregorio Ranch?
11 **MR. HOLZER: Objection, privileged. I'm**
12 **going to instruct the witness not to answer the question.**

5)        Page 17, Lines 2-12 and 17-25:

2 Q Okay. So, we're good with that. Did you
3 talk to any of the petitioning creditors about the 75
4 million dollar portion of the damage claim before you filed
5 the proofs of claim?
6 **MR. HOLZER: Objection, privileged. I'm**
7 **instructing the witness not to answer the question.**
8 Q Did you talk to Craig Smith before you filed
9 the proof of claim with respect to the 75 million dollar
10 portion of the claim?
11 **MR. HOLZER: Objection, privileged. I'm**
12 **instruction the witness not to answer the question.**

17 Q Did you talk to Mr. Daniel Airey before you
18 filed the 75 million dollar portion of the proofs of
19 claims?
20 **MR. HOLZER: Objection, privileged. I'm**
21 **instructing the witness not to answer the question.**
22 Q Did you talk to anyone other than the
23 petitioning creditors, Craig Smith, and Daniel Airey before
24 you filed the 75 million dollar portion of the proof of
25 claims?

2

6)      Page 18, Lines 1-25:

1 **MR. HOLZER: Objection privilege. I'm**
2 **instructing the witness not to answer the question.**
3 Q Did you review any documents before you filed
4 the 75 million dollar proof of claim?
5 **MR. HOLZER: Objection, privileged. I'm**
6 **instructing the witness not to answer the question. I have**
7 **an objection to the question as well.**
8 Q I didn't ask a good question. I want to ask
9 that one over, all right? If you look again at the proofs
10 of claim, you attached an exhibit to the proofs of claim.
11 MR. HOLZER: Objection.
12 Q Exhibit 2, you see that?
13 A Yes.
14 Q Okay. Where did you get that document from?
15 **MR. HOLZER: Objection, privileged. I'm**
16 **instructing the witness not to answer the question.**
17 Q Was this document given to you by the
18 petitioning creditors?
19 **MR. HOLZER: Objection, privileged. I'm**
20 **instructing the witness not to answer the question.**
21 Q Was this document given to you by Craig
22 Smith?
23 **MR. HOLZER: Objection, privileged. I'm**
24 **instructing the witness not to answer the question.**
25 Q Was this document given to you by Daniel

7)      Page 19, Lines 1-18:

1 Airey?
2 **MR. HOLZER: Objection, privileged. I'm**
3 **instructing the witness not to answer the question.**
4 Q Did anyone other than the petitioning
5 creditors, Craig Smith, or Daniel Airey give you Exhibit 2
6 to the proofs of claims?
7 **MR. HOLZER: Objection, privileged. I'm**
8 **instructing the witness not to answer the question.**
9 Q You also attached -- Well, let's stay with
10 this for a second. Did you review any other documents or
11 did you review this document before you attached it to the
12 proof of claims?
13 **MR. HOLZER: Objection, privileged. I'm**
14 **instructing the witness not to answer the question.**

3

15 Q Did you undertake any review of the
16 documentation before you filed the proofs of claim?
**17 MR. HOLZER: Objection, privileged. I'm**
**18 instructing the witness not to answer the question.**

    8)    Page 21, Lines 12-25:

12 Q (By Mr. Anderson) Mr. Womble, I've handed
13 you what's been marked as Exhibit 3 to your deposition, and
14 I would like for to know if you've ever seen this document
15 before?
16 A Yes.
17 Q Okay. Did you help prepare this document?
**18 MR. HOLZER: Objection, privileged. I'm**
**19 instructing the witness not to answer the question.**
20 Q Was this document provided to you by Craig
21 Smith?
**22 MR. HOLZER: Objection, privileged. I'm**
**23 instructing the witness not to answer the question.**
24 Q Mr. Womble, were you -- are you aware that
25 there was a previous lawsuit by the petitioning creditors

    9)    Page 22, Lines 1-3 and 12-25:

1 against Dewey Bellows Operating Company, Limited?
**2 MR. HOLZER: Objection, privileged. I'm**
**3 instructing the witness not to answer the question.**

12 Q (By Mr. Anderson) Did you review any
13 documents from the previous lawsuit filed by the
14 petitioning creditors against Dewey Bellows Operating
15 Company, Limited prior to filing the proofs of claim?
**16 MR. HOLZER: Objection, privileged. I'm**
**17 instructing the witness not to answer the question.**
18 Q Did you review any document -- Let me see
19 this back: I don't need to see it back. I've got it right
20 here. Did you review any documents in cause number
21 PR-98-37, Francisca Rodriguez versus Olivia Olivares
22 Rodriguez and Gabriel Rodriguez before filing the proofs of
23 claim?
**24 MR. HOLZER: Objection, privileged. I'm**
**25 instructing the witness not to answer the question.**

4

10)     Page 23, Lines 1-13:

1 Q Before you filed the proofs of claim, did you
2 look at the judgement that was entered in the petitioning
3 creditors' lawsuit against Dewey Bellows Operating Company,
4 Limited?
5 MR. HOLZER: Objection, privileged. I'm
6 instructing the witness not to answer the question.
7 Q At the time that you filed the proofs of
8 claim, were you aware that the judgement in the petitioning
9 creditors' lawsuit against Dewey Bellows Operating Company,
10 Limited had been satisfied?
11 MR. HOLZER: Objection, form; and,
12 objection, privileged. I'm going to instruct the witness
13 not to answer the question.

11)     Page 25, Lines 20-25:

20 Q (By Mr. Anderson) Let me see. What was I
21 thinking about? I was thinking about -- Oh, yeah. With
22 respect to this San Gregorio Ranch, did you review any
23 documentation -- And, actually, I need to ask you another
24 question. With respect to the San Gregorio Ranch, did you
25 talk to Craig Smith before you signed the proofs of claim?

12)     Page 26, Lines 1-22:

1 MR. HOLZER: Objection, privileged. I'm
2 instructing the witness not to answer the question.
3 Q With respect to the source of the spill on
4 the San Gregorio Ranch, did you talk to any of the -- to
5 Daniel Airey?
6 MR. HOLZER: Objection, privileged, I'm
7 instructing the witness not to answer the question.
8 Q With respect to the source of the spill on
9 the San Gregorio Ranch, did you talk to anyone other than
10 the petitioning creditors, Craig Smith, and Mr. Daniel
11 Airey?
12 MR. HOLZER: Objection, privileged. I'm
13 instructing the witness not to answer the question.
14 Q What is the element of damage in the proofs
15 of claim for the spill?
16 MR. HOLZER: Objection, privileged. I'm
17 instructing the witness not to answer the question.

5

18 Q Is the element of damage for the proof -- for
19 the cost of the spill include the removal of dirt from the
20 San Gregorio Ranch?
(31) 21 MR. HOLZER: Objection, privileged. I'm
22 instructing the witness not to answer the question.

13)     Page 27, Lines 1-25:

1 A "Cost of removal and replacement of affected
2 soil under saltwater disposal agreement."
3 Q Okay. What does the cost refer to?
(32) 4 MR. HOLZER: Objection, privileged. I'm
5 instructing the witness not to answer the question.
6 Q What does the affected soil refer to?
7 MR. HOLZER: Objection, privileged. I'm
8 instructing the witness not to answer the question.
9 Q What does the saltwater disposal agreement
10 refer to?
(33) 11 MR. HOLZER: Objection, privileged. I'm
12 instructing the witness not to answer the question. I'm
13 sorry. I jumped on top.
14 Q Did you talk to anyone about the cost of
15 removal and replacement of the affected soil -- No.
16 Actually, did you talk to the petitioning creditors about
17 the cost of removal and replacement of the affected soil
18 under the saltwater disposal agreement before you signed
19 it?
(34) 20 MR. HOLZER: Objection, privileged. I'm
21 instructing the witness not to answer the question.
22 Q Did you talk to Mr. Craig Smith about that
23 issue?
(35) 24 MR. HOLZER: Objection, privileged. I'm
25 instructing the witness not to answer the question.

14)     Page 28, Lines 1-9:

1 Q Did you talk to Mr. Daniel Airey about that
2 issue?
(36) 3 MR. HOLZER: Objection, privileged. I'm
4 instructing the witness not to answer the question.
5 Q Did you talk to anyone other than the
6 petitioning creditors, Craig Smith and Daniel Airey, with
7 respect to that.
(37) 8 MR. HOLZER: Objection, privileged. I'm

6

9 instructing the witness not to answer the question.

      15)    Page 29, Lines 10-18 and 24-25:

14 Q At the time that you filed the proofs of
15 claim, were you aware that Craig Smith owned any portion of
16 the San Gregorio Ranch as set forth on Exhibit 2?
**17 MR. HOLZER: Objection, privileged. I'm**
**18 instructing the witness not to answer the question.**

      16)    Page 30, Lines 18-24:

18 Q So, as to the portion of the San Gregorio
19 Ranch on Exhibit B that's undivided, you have no knowledge
20 about the extent of Mr. Smith's ownership, other than it's
21 an undivided interest?
**22 MR. HOLZER: Yeah. Objection,**
**23 privileged. I'm instructing the witness not to -- that's**
**24 already been on there.**

      17)    Page 31, Lines 6-25:

6 Q Have you talked to Craig Smith about his
7 ownership of the surface on the San Gregorio Ranch?
**8 MR. HOLZER: Objection, privileged. I'm**
**9 instructing the witness not to answer the question.**
10 Q Have you talked to Mr. Craig Smith about his
11 undivided ownership on the San Gregorio Ranch?
**12 MR. HOLZER: Objection, privileged. I'm**
**13 instructing the witness not to answer the question.**
14 Q Have you talked to anyone else about -- Have
15 you talked to any of the petitioning creditors about Craig
16 Smith's undivided ownership on the San Gregorio Ranch?
**17 MR. HOLZER: Objection, privileged. I'm**
**18 instructing the witness not to answer the question.**
19 Q And have you talked to anyone else about
20 Craig Smith's ownership of an undivided interest on the San
21 Gregorio Ranch?
**22 MR. HOLZER: Objection, privileged. I'm**
**23 instructing the witness not to answer the question.**
24 Q Did you review any documents to establish the
25 percentages associated with the petitioning creditors'

18)     Page 32, Lines 1-14:

1 names as to the percentage of cost and removal and
2 replacement on Exhibit 2?
3 MR. HOLZER: Objection, privileged. I'm
4 instructing the witness not to answer the question.
5 Q Have you looked at any conveyance documents
6 into Craig Smith with respect to the surface of the San
7 Gregorio Ranch?
8 MR. HOLZER: Objection, privileged. I'm
9 instructing the witness not to answer the question.
10 Q Have you looked at any documents which refer
11 to the claims asserted by the petitioning creditors which
12 relate to the conveyance documents into Craig Smith?
13 MR. HOLZER: Objection, privileged. I'm
14 instructing the witness not to answer the question.

19)     Page 33, Lines 4-25:

4 Q Did you discuss, with Craig Smith, the
5 ownership of the San Gregorio Ranch before you signed the
6 proofs of claim?
7 MR. HOLZER: Objection, privileged. I'm
8 instructing the witness not to answer the question.
9 Q Did you talk to the petitioning creditors
10 about the ownership of the surface of the San Gregorio
11 Ranch before you filed the proofs of claim?
12 MR. HOLZER: Objection, privileged. I'm
13 instructing the witness not to answer the question.
14 Q Did you review any documents to establish the
15 ownership of the San Gregorio Ranch before you signed the
16 proofs -- the surface of the San Gregorio Ranch before you
17 signed the proofs of claim?
18 MR. HOLZER: Objection, privileged. I'm
19 instructing the witness not to answer the question.
20 Q Do you know if in the Bellows -- in the
21 lawsuit filed by the petitioning creditors against Bellows
22 Operating Company, Limited, that the petitioning creditors
23 sought to recover for the cost of removal and replacement
24 of affected soil?
25 MR. HOLZER: Objection, privileged. I'm

8

20)     Page 34, Lines 1-17:

1 instructing the witness not to answer the question.
2 Q Do you know if Daniel Airey provided an
3 expert report in the lawsuit filed by the petitioning
4 creditors against the Bellows -- Now I've forgotten the
5 name of the company -- Dewey Bellows Operating Company,
6 Limited?
7 MR. HOLZER: Objection, privilege. I'm
8 instructing the witness not to answer the question.
9 Q Prior to the time that you signed the proofs
10 of claim, did you have any conversation with Daniel Airey.
11 MR. HOLZER: Objection, privileged. I'm
12 instructing the witness not to answer the question.
13 Q Prior to the filing of the proofs of claim,
14 did you ask Daniel Airey to do any work on the San Gregorio
15 Ranch?
16 MR. HOLZER: Objection, privileged. I'm
17 instructing the witness not to answer the question.

21)     Page 36, Lines 24-25 and 24-25:

24 Q Did you review -- Do you have any documents
25 in your possession which support this number?

22)     Page 37, Lines 1-6 and 10-25:

1 MR. HOLZER: Objection, privileged. I'm
2 instructing the witness not to answer the question.
3 Q Mr. Womble, do you keep notes of your
4 conversations with experts in the course of litigation?
5 MR. HOLZER: Objection, privileged. I'm
6 instructing the witness not to answer the question.

10 Q All right? And I'm going to ask you a few
11 questions about that. With respect to the gross receipts
12 referenced with respect to 2004, did you talk to the
13 petitioning creditors before you signed the proof of claim
14 with this amount in it?
15 MR. HOLZER: Objection, privileged. I'm
16 instructing the witness not to answer the question.
17 Q Did you talk to Craig Smith about this?
18 MR. HOLZER: Objection, privileged. I'm
19 instructing the witness not to answer the question.



20 Q Did you talk to anyone else about this?
21 MR. HOLZER: Objection, privileged. I'm
22 instructing the witness not to answer the question.
23 Q Did you obtain any documents with respect to
24 this amount before you signed it?
25 MR. HOLZER: Objection, privileged. I'm

    23)      Page 38, Lines 1-25:

1 instructing the witness not to answer the question.
2 Q Did you review any documents with respect to
3 this amount before you signed it?
4 MR. HOLZER: Objection, privileged. I'm
5 instructing the witness not to answer the question.
6 Q Would you look at the years 2005 through 2007
7 on this exhibit, please?
8 A Yes. I'm looking at them now.
9 Q Okay. Did you talk to the petitioning
10 creditors about these amounts before you signed them?
11 MR. HOLZER: Objection, privileged. I'm
12 instructing the witness not to answer the question.
13 Q Before you signed this proof of claim with
14 this amount in it, had you visited with the petitioning
15 creditors at all?
16 MR. HOLZER: Objection, privileged. I'm
17 instructing the witness not to answer the question.
18 Q Did you obtain any documents with respect to
19 these amounts before you signed the proof of claim?
20 MR. HOLZER: Objection, privileged. I'm
21 instructing the witness not to answer the question.
22 Q Did you review any documents with respect to
23 these amounts before you signed the proof of claim?
24 MR. HOLZER: Objection, privileged. I'm
25 instructing the witness not to answer the question.

    24)      Page 39, Lines 22-25:

22 Q Did you work on providing the answers to the
23 discovery responses filed by Bellows in this adversary
24 proceeding?
25 MR. HOLZER: Objection, privileged. I'm

25)    Page 40, Lines 1-9:

**1 instructing the witness not to answer the question.**
2 Q All right. The current discovery responses
3 have not been verified. Are the petitioning creditors
4 going to provide a verification with respect to their
5 interrogatory responses --
6 MR. HOLZER: Objection.
7 Q -- without a motion to compel?
**8 MR. HOLZER: Objection, privileged. I'm**
**9 instructing the witness not to answer the question.**

(66)

26)    Page 41, Lines 16-25:

16 Q Your contract to represent the PC's, are you
17 being paid on an hourly rate to represent the petitioning
18 creditors?
**19 MR. HOLZER: Objection, privileged. I'm**
**20 instructing him not to answer the question.**
21 Q Are you -- Your contract with the
22 petitioning creditors in this case, is it a contingent fee
23 agreement?
**24 MR. HOLZER: Objection, privileged. I'm**
**25 instructing the witness not to answer the question.**

(67)

(68)

27)    Page 42, Lines 1-9, Line 18-25:

1 Q Is there a fee sharing arrangement between
2 your offices and Mr. Smith with respect to the -- any
3 contingent fee arrangement in this lawsuit?
**4 MR. HOLZER: Objection, privileged. I'm**
**5 instructing the witness not to answer the question.**
6 Q Do you have a fee sharing arrangement with
7 anyone other than Mr. Smith in this lawsuit?
**8 MR. HOLZER: Objection, privileged. I'm**
**9 instructing the witness not to answer the question.**

(69)

(70)

18 Q Thank you. Does Mr. Smith have a fee
19 agreement with the petitioning creditors with respect to
20 this lawsuit?
**21 MR. HOLZER: Objection, privileged. I'm**
**22 instructing the witness not to answer the question.**
23 Q Did you assist, in any way, in the
24 preparation of the responses to discovery in this lawsuit?

(71)

(72) **25 MR. HOLZER: Objection, privileged. I'm**

28)   Page 43, Lines 1-25:

**1 instructing the witness not to answer the question.**
2 Q Did you provide the petitioning creditors
3 with a copy of the discovery which was served on the PC's
4 by Bellows in this lawsuit?
(73) **5 MR. HOLZER: Objection, privileged. I'm**
**6 instructing the witness not to answer the question.**
7 Q Are you aware of any other attorneys' fees
8 contracts with respect to the -- this lawsuit, other than
9 the contract that you have with the petitioning creditors?
(74) **10 MR. HOLZER: Objection, privileged. I'm**
**11 instructing the witness not to answer the question.**
12 Q Do you have an agreement with the law offices
13 of Michael Schmidt with respect to the sharing of fees in
14 this lawsuit?
(75) **15 MR. HOLZER: Objection, privileged. I'm**
**16 instructing the witness not to answer the question.**
17 Q Do you know if the PC's have ever had a
18 contingent fee agreement -- an attorney's fees agreement
19 with Ramon Garcia, a lawyer in the valley?
(76) **20 MR. HOLZER: Objection, privileged. I'm**
**21 instructing the witness not to answer the question.**
22 Q Do you know if the petitioning creditors ever
23 had a contingent fee agreement with Michael Lee?
(77) **24 MR. HOLZER: Objection, privileged. I'm**
**25 instructing the witness not to answer the question.**

29)   Page 44, Lines 1-16:

1 Q Do you know if the petitioning creditors ever
2 had a attorney's fees agreement with George Powell?
(78) **3 MR. HOLZER: Objection, privileged. I'm**
**4 instructing the witness not to answer the question.**
5 Q Do you know if Ramon Garcia ever provided
6 legal services to the petitioning creditors?
(79) **7 MR. HOLZER: Objection privileged. I'm**
**8 instructing the witness not to answer the question.**
9 Q Do you know if Mike Lee ever provided legal
10 services to the petitioning creditors?
(80) **11 MR. HOLZER: Objection, privileged. I'm**
**12 instructing the witness not to answer the question.**

13 Q Do you know if George Powell ever provided
14 legal services to the petitioning creditors?
**15 MR. HOLZER: Objection, privileged. I'm**
**16 instructing the witness not to answer the question.**

30)    Page 44, Lines 21-25:

21 Q Can you identify the basis for -- Looking at
22 Exhibit 1 to each of the proofs of claim, can you identify
23 the basis for the calculation of $75,000 on that exhibit?
24 MR. HOLZER: Objection.
25 Q 75 million dollars on that exhibit?

31)    Page 45, Lines 1-16:

**1 MR. HOLZER: Objection, privileged. I'm**
**2 instructing the witness not to answer the question.**
3 Q Continuing on with Exhibit 1, can you
4 identify the basis for the $1,665,432.16?
**5 MR. HOLZER: Objection, privileged. I'm**
**6 instructing the witness not to answer the question.**
7 Q Continuing on with that exhibit, can you
8 identify the basis for the percentages associated with each
9 of the petitioning creditors' names on this chart?
**10 MR. HOLZER: Objection, privileged. I'm**
**11 instructing the witness not to answer the question.**
12 Q Continuing on with this claim, can you
13 identify the percentage of cost and removal associated with
14 each one of the petitioning creditors' names on this chart?
**15 MR. HOLZER: Objection, privileged. I'm**
**16 instructing the witness not to answer the question.**

32)    Page 47, Lines 14-20:

14 Q All right. Who is Mr. Lee representing at
15 this time?
**16 MR. HOLZER: Objection, privileged. I'm**
**17 going to instruct the witness not to answer the question.**
18 Q 10/8/2010, who does Mr. Lee represent?
**19 MR. HOLZER: Objection, privileged. I'm**
**20 instructing the witness not to answer the question.**

13

33)     Page 48, Lines 18-25:

18 Q Who is Mr. Lee representing at this time?
**19 MR. HOLZER: Objection, privileged. I'm**
**20 instructing the witness not to answer the question.**
21 Q There is a -- apparently -- an additional
22 person named George Powell involved. Who is Mr. Powell?
23 A I think Mr. Powell is a lawyer, but I don't
24 know him particularly well.
25 Q Is he representing the petitioning creditors?

34)     Page 49, Lines 1-14:

**1 MR. HOLZER: Objection, privileged. I'm**
**2 instructing the witness not to answer the question.**
3 Q At the time of this e-mail, was he
4 representing the petitioning creditors?
**5 MR. HOLZER: Objection, privileged. I'm**
**6 instructing the witness not to answer the question.**
7 Q At the time of this e-mail, who was he
8 representing?
**9 MR. HOLZER: Objection, privileged. I'm**
**10 instructing the witness not to answer the question.**
11 Q When did Mike Lee become the attorneys for
12 debtors in this lawsuit?
**13 MR. HOLZER: Objection, privileged. I'm**
**14 instructing the witness not to answer the question.**

35)     Page 51, Lines 9-25:

9 Q There is a joint defense assertion in this
10 lawsuit. When did that joint defense develop between the
11 petitioning creditors and the trustee's office in this
12 case?
**13 MR. HOLZER: Objection, privileged. I'm**
**14 instructing the witness not to answer the question.**
15 Q When did the trustee's office and Mr. Craig
16 Smith and/or Mr. Womble meet and agree to the joint defense
17 privilege with respect to this case?
**18 MR. HOLZER: Objection, privileged. I'm**
**19 instructing the witness not to answer the question.**
20 Q (By Mr. Anderson) In the context of the
21 joint defense, has there been an agreement reduced to
22 writing between Mr. Schmidt's office and Mr. -- and your

14

23 offices and Mr. Smith's office?
24 MR. HOLZER: Objection, privileged. I'm
25 instructing the witness not to answer the question.

36)     Page 52, Lines 1-25:

1 Q With respect to the joint defense that's been
2 asserted in this -- privileged in this case, is there any
3 limitation on that joint defense privilege asserted in this
4 lawsuit that you're aware of?
5 MR. HOLZER: Objection, privileged. I'm
6 instructing the witness not to answer the question.
7 Q Is it your position that all of the
8 communications prior to the two -- Mr. Lee's office or to
9 Mr. Powell's office prior to the entry of Exhibit 5 are
10 privileged because of the joint defense privilege?
11 MR. HOLZER: Objection, privileged. I'm
12 instructing the witness not to answer the question.
13 Q Turning back to the original bank stamped
14 document 1 through 17 dated 10/8/2010, have you seen that
15 document?
16 MR. HOLZER: Objection, privileged. I'm
17 instructing the witness not to answer the question.
18 Q Can you tell us what those documents discuss
19 and what are contained in those documents?
20 MR. HOLZER: Objection, privileged. I'm
21 instructing the witness not to answer the question.
22 Q With respect to the Bates stamp documents, I
23 think we said 18 through 38, dated 10/11/2010, have you
24 seen that document?
25 MR. HOLZER: Objection, privileged. I'm

37)     Page 53, Lines 1-5 and 8-23:

1 instructing the witness not to answer the question.
2 Q Can you tell us what is the contents of those
3 documents?
4 MR. HOLZER: Objection, privileged. I'm
5 instructing the witness not to answer the question.

8 MR. ANDERSON: Mr. Holzer, will you --
9 is it -- your position going to be that with respect to the
10 questions I ask about the correspondence between your
11 firm's offices and Craig Smith's offices to Mike Lee and


15

12 George Powell, that you're going to object to those
13 questions on the basis of privilege, whatever those
14 questions are?
15 MR. HOLZER: I'm going to -- Robert, I
16 haven't looked at this before, so -- but **I am going to**
17 **object to any questions that you ask of Mr. Womble that**
18 **concern his review of, his knowledge of, his consideration**
19 **of, any documents in this case period.**
20 MR. ANDERSON: And that would apply to
21 these documents that are listed in this privileged log in
22 Exhibit --
23 MR. HOLZER: Right.

   38)     Page 54, Lines 4-8:

4 MR. HOLZER: But, as a general basis,
5 yes. You will always -- **Any questions you ask about --**
6 **Mr. Womble in this deposition regarding any documents on**
7 **this 34 page list of .6. print privilege law, I'm going to**
8 **object.**

```
 1              UNITED STATES BANKRUPTCY COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    McALLEN DIVISION

 3   IN RE:
     GABRIEL G. RODRIGUEZ, Debtor  ) Case No. 10-70606
 4                                 ) Chapter 7

 5   _____

     MICHAEL B. SCHMIDT, In His    )
 6   Capacity as Chapter 7 Trustee )
                                   )
 7   VS.                           )   Adversary No. 11-7012
                                   )
 8   APOLINAR RODRIGUEZ, PETRA     )
     RODRIGUEZ, MARIA LILIA G.     )
 9   HENKEL, ISRAEL GUERRA, JR.,   )
     FILIBERTO A. GARZA, IMELDA    )
10   SAENZ, MARIO CORONA GARZA,    )
     AND DEWEY BELLOWS OPERATING   )
11   COMPANY, LTD                  )
                                   )
12            Defendant(s)         )

13

14

15   ********************************************************

16           ORAL AND VIDEOTAPED DEPOSITION OF

17               HARLIN C. WOMBLE, JR.

18                  JULY 12, 2012

19   ********************************************************

20

21

22

23

24

25
```

EXHIBIT
D
_____

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                           5

```
 1              VIDEOGRAPHER:  Today's date is July 12,

 2    2012.  The time is approximately 9:15 a.m.  This is disc

 3    one.  We're on record.

 4

 5              HARLIN C. WOMBLE, JR.,

 6    having been first duly sworn, testified as follows:

 7

 8              E X A M I N A T I O N

 9    BY MR. ANDERSON:

10         Q    Would you state your name.

11         A    Harlin Clyde Womble, Jr.

12         Q    Mr. Womble, do you represent the petitioning

13    creditors in the bankruptcy and the adversary proceeding?

14         A    I do.

15         Q    And who do you understand the petitioning

16    creditors to be?

17         A    Oh, I don't --

18         Q    How about if I go through a list of names

19    with you?

20              MR. HOLZER:  Objection.

21         A    I believe them to be Apolinar Rodriguez,

22    Petra Rodriguez, Marie Lilia G. Henkel, Israel Guerra, Jr.,

23    Filiberto A. Garza, Imelda Saenz, Mario Corona, Homero

24    Corona, Blanca Corona Garza.

25         Q    When did you start representing those
```

Harlin C. Womble, Jr.                                          12

 1   before we get further into the deposition.

 2           A     I understand that when you say San Gregorio

 3   Ranch, you would be referring to Tract 1-D and 2-B on

 4   Exhibit 2.

 5           Q     Thank you very much. All right. To the

 6   extent that you are answering a question that you think

 7   needs to refer to other acreage which is not in these two

 8   tracts, please differentiate for me in the deposition.

 9           A     I will.

10           Q     Thank you. Now, the proofs of claim, Exhibit

11   1, do -- you signed those; is that correct?

12           A     I did.

13           Q     Okay. In doing so, did you obtain

14   authorization to sign those by talking to each of the

15   petitioning creditors?

16                 MR. HOLZER:  Objection, privileged.

17   Instruct the witness not to answer the question about

18   communications with his clients.

19                 MR. ANDERSON:  What is privileged about

20   asking the question about whether or not he got permission

21   from his clients to execute the proofs of claim?

22                 MR. HOLZER:  You're asking for a

23   communication between Mr. Womble and his clients.

24           Q     (By Mr. Anderson)   Did you talk to your

25   clients before you filed the proofs of claim?

```
 1          A    No.

 2          Q        Who did you obtain -- Who gave you permission

 3    to file the proofs of claims if you did not talk to your

 4    clients?

 5                   MR. HOLZER:  Objection, privilege.  I'm

 6    going to instruct the witness not to answer the question.

 7                   MR. ANDERSON:  What's privileged about

 8    that?

 9                   MR. HOLZER:  You're asking Mr. Womble

10    for the work product in the case and communications with

11    either clients or other co-counsel in the case.

12          Q        (By Mr. Anderson)    Did you talk to Craig

13    Smith before you filed the proofs of claim?

14                   MR. HOLZER:  Objection, privileged.  I

15    instruct the witness not to answer the question, the same

16    explanation.

17                   MR. ANDERSON:  What's privileged about

18    asking whether he talked to Craig Smith before he filed the

19    proofs of claim?

20                   MR. HOLZER:  You're asking Mr. Womble

21    for communications between him and another lawyer in the

22    case?

23                   MR. ANDERSON:  So, it's your position

24    that asking if there were communications violates the

25    privilege?
```

1    bankruptcy estate -- for trespass in violation of fiduciary

2    duty.

3                    MR. ANDERSON:  Okay.

4        Q    (By Mr. Anderson)    Is there a damage model

5    associated with the trespass claim?

6                    MR. HOLZER:  Objection.  Privileged and

7    I'm instructing the witness not to answer the question.

8        Q    Is there -- Are you going to follow that

9    instruction?

10       A    I am.

11       Q    Is the damage model for the trespass the cost

12   of removal and replacement of the dirt?

13                   MR. HOLZER:  Objection, privileged.  I'm

14   going to instruct the witness not to answer the question.

15       Q    How is the --  I'm going to rephrase that

16   question for you.  Is the damage model, in part, for the

17   cost of removal and replacement of the dirt?

18                   MR. HOLZER:  Objection, privileged,

19   instruct the witness not to answer the question.

20       Q    I'm sorry.  On the San Gregorio Ranch.

21                   MR. HOLZER:  The same objection.

22       Q    Are you going to follow the instructions of

23   attorney?

24       A    Yes.

25       Q    I don't need to ask that.

Harlin C. Womble, Jr.                                                    16

1      A       You don't need to ask that one.  When you

2   hire an attorney, you should follow his instructions.

3      Q       In the proof of claim, you sought damages, in

4   part, in the amount of $76,665,432.16?

5                  MR. HOLZER:  Objection.

6      Q       Correct?

7      A       Yes.

8      Q       Is that damage --  Is that number based upon

9   the cost of removal and replacement of the dirt on the San

10  Gregorio Ranch?

11                 MR. HOLZER:  Objection, privileged.  I'm

12  going to instruct the witness not to answer the question.

13     Q       In establishing the damage, the number, in

14  part of --  Harlin, are you okay with me referring to this

15  as 76 million?

16     A       Yeah.

17     Q       Instead of saying it over and over again?

18     A       75.  At least that's what the -- 75 million.

19     Q       Yeah.  Sure.

20     A       And then if you want to add other, it would

21  be 76.6.  So, round it up, it would be 77 --.

22     Q       Thank you.  Thank you very much for

23  correcting that because I really wanted to talk about the

24  75 million dollars, and I think you assumed that's what I

25  was talking about?

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                                    17

```
1        A      That's exactly what I assumed.

2        Q      Okay.  So, we're good with that.  Did you

3   talk to any of the petitioning creditors about the 75

4   million dollar portion of the damage claim before you filed

5   the proofs of claim?

6               MR. HOLZER:  Objection, privileged.  I'm

7   instructing the witness not to answer the question.

8        Q      Did you talk to Craig Smith before you filed

9   the proof of claim with respect to the 75 million dollar

10  portion of the claim?

11              MR. HOLZER:  Objection, privileged.  I'm

12  instruction the witness not to answer the question.

13       Q      Did you talk to --

14              MR. ANDERSON:  What's Mr. Airey's first

15  name?

16              MR. MARAIST:  Daniel.

17       Q      Did you talk to Mr. Daniel Airey before you

18  filed the 75 million dollar portion of the proofs of

19  claims?

20              MR. HOLZER:  Objection, privileged.  I'm

21  instructing the witness not to answer the question.

22       Q      Did you talk to anyone other than the

23  petitioning creditors, Craig Smith, and Daniel Airey before

24  you filed the 75 million dollar portion of the proof of

25  claims?
```

Harlin C. Womble, Jr.                                                    18

```
 1                    MR. HOLZER:  Objection privilege.  I'm

 2    instructing the witness not to answer the question.

 3          Q      Did you review any documents before you filed

 4    the 75 million dollar proof of claim?

 5                    MR. HOLZER:  Objection, privileged.  I'm

 6    instructing the witness not to answer the question.  I have

 7    an objection to the question as well.

 8          Q    I didn't ask a good question.  I want to ask

 9    that one over, all right?  If you look again at the proofs

10    of claim, you attached an exhibit to the proofs of claim.

11                    MR. HOLZER:  Objection.

12          Q    Exhibit 2, you see that?

13          A    Yes.

14          Q    Okay.  Where did you get that document from?

15                    MR. HOLZER:  Objection, privileged.  I'm

16    instructing the witness not to answer the question.

17          Q    Was this document given to you by the

18    petitioning creditors?

19                    MR. HOLZER:  Objection, privileged.  I'm

20    instructing the witness not to answer the question.

21          Q    Was this document given to you by Craig

22    Smith?

23                    MR. HOLZER:  Objection, privileged.  I'm

24    instructing the witness not to answer the question.

25          Q    Was this document given to you by Daniel
```

Harlin C. Womble, Jr.                                                    19

```
 1    Airey?

 2                    MR. HOLZER:  Objection, privileged.  I'm

 3    instructing the witness not to answer the question.

 4          Q      Did anyone other than the petitioning

 5    creditors, Craig Smith, or Daniel Airey give you Exhibit 2

 6    to the proofs of claims?

 7                    MR. HOLZER:  Objection, privileged.  I'm

 8    instructing the witness not to answer the question.

 9          Q      You also attached -- Well, let's stay with

10    this for a second.  Did you review any other documents or

11    did you review this document before you attached it to the

12    proof of claims?

13                    MR. HOLZER:  Objection, privileged.  I'm

14    instructing the witness not to answer the question.

15          Q      Did you undertake any review of the

16    documentation before you filed the proofs of claim?

17                    MR. HOLZER:  Objection, privileged.  I'm

18    instructing the witness not to answer the question.

19                    MR. ANDERSON:  Why is the question about

20    whether he reviewed any documentation privileged?

21                    MR. HOLZER:  You're asking for his work

22    product.

23                    MR. ANDERSON:  Why does a question about

24    the review of documentation involve work product?

25                    MR. HOLZER:  That's what he does,
```

```
 1    me.

 2            Q    (By Mr. Anderson)   Mr. Womble, did you

 3    review any of the records -- Let me show you.

 4                 MR. ANDERSON:  We've only got one of

 5    these?

 6                 MR. MARAIST:  This one, right?

 7                 MR. ANDERSON:  Oh, yeah.  That's it.

 8    We've got extras.  Craig, if you want one, I have an extra

 9    one.

10                      (EXHIBIT NO. 3 WAS MARKED

11                       FOR IDENTIFICATION.)

12            Q    (By Mr. Anderson)   Mr. Womble, I've handed

13    you what's been marked as Exhibit 3 to your deposition, and

14    I would like for to know if you've ever seen this document

15    before?

16            A    Yes.

17            Q    Okay.  Did you help prepare this document?

18                 MR. HOLZER:  Objection, privileged.  I'm

19    instructing the witness not to answer the question.

20            Q    Was this document provided to you by Craig

21    Smith?

22                 MR. HOLZER:  Objection, privileged.  I'm

23    instructing the witness not to answer the question.

24            Q    Mr. Womble, were you -- are you aware that

25    there was a previous lawsuit by the petitioning creditors
```

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.

22

1    against Dewey Bellows Operating Company, Limited?

2                    MR. HOLZER:  Objection, privileged.  I'm

3    instructing the witness not to answer the question.

4                    MR. ANDERSON:   What's privileged about

5    whether or not he knows the existence of the lawsuit --

6                    MR. HOLZER:  You're asking --

7                    MR. ANDERSON:  -- between the

8    petitioning creditors and Dewey Bellows Operating Company,

9    Limited?

10                   MR. HOLZER:  You're asking a lawyer in

11   the matter about his thought process, work product.

12        Q     (By Mr. Anderson)   Did you review any

13   documents from the previous lawsuit filed by the

14   petitioning creditors against Dewey Bellows Operating

15   Company, Limited prior to filing the proofs of claim?

16                   MR. HOLZER:  Objection, privileged.  I'm

17   instructing the witness not to answer the question.

18        Q     Did you review any document -- Let me see

19   this back.  I don't need to see it back.  I've got it right

20   here.  Did you review any documents in cause number

21   PR-98-37, Francisca Rodriguez versus Olivia Olivares

22   Rodriguez and Gabriel Rodriguez before filing the proofs of

23   claim?

24                   MR. HOLZER:  Objection, privileged.  I'm

25   instructing the witness not to answer the question.

Harlin C. Womble, Jr.                                                    23

1          Q      Before you filed the proofs of claim, did you

2    look at the judgement that was entered in the petitioning

3    creditors' lawsuit against Dewey Bellows Operating Company,

4    Limited?

5                      MR. HOLZER:  Objection, privileged.  I'm

6    instructing the witness not to answer the question.

7          Q      At the time that you filed the proofs of

8    claim, were you aware that the judgement in the petitioning

9    creditors' lawsuit against Dewey Bellows Operating Company,

10   Limited had been satisfied?

11                     MR. HOLZER:  Objection, form; and,

12   objection, privileged.  I'm going to instruct the witness

13   not to answer the question.

14                     MR. ANDERSON:  What's the objection as

15   to form?

16                     MR. HOLZER:  Well, I'm not going to

17   argue about my objections in this deposition.

18                     MR. ANDERSON:  My understanding of the

19   rules is that if you object to form and I ask for a

20   clarification, you need to clarify for me so I can try and

21   correct it.

22                     MR. HOLZER:  You've asked him, several

23   times, about whether he's filed the proofs of claim.

24                     MR. ANDERSON:  Okay.  We're okay then.

25                     MR. CLARK:  Just for my own edification,

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                                          25

1    that he filed them.

2              MR. ANDERSON:  All right.

3              MR. HOLZER:  It's a minor thing.

4         Q    (By Mr. Anderson)  When I asked you the

5    questions about the filed proofs of claim, I was doing so

6    under the assumption that you would have signed those

7    before you filed them.  With that assumption in my mind, do

8    you need to change any of the answers that you've

9    previously given me here today?

10        A    They were signed before they were filed.

11        Q    Thank you.

12             MR. ANDERSON:  And I'll try and do it

13   the way you --

14             MR. HOLZER:  I don't think he knows how

15   to file anything.

16             MR. ANDERSON:  Okay.  Yeah.  We

17   certainly don't need to have that amongst all the others

18   that are going on.

19             MR. HOLZER:  That's right.

20        Q    (By Mr. Anderson)  Let me see.  What was I

21   thinking about?  I was thinking about -- Oh, yeah.  With

22   respect to this San Gregorio Ranch, did you review any

23   documentation -- And, actually, I need to ask you another

24   question.  With respect to the San Gregorio Ranch, did you

25   talk to Craig Smith before you signed the proofs of claim?

Harlin C. Womble, Jr.                                    26

1               MR. HOLZER:  Objection, privileged.  I'm

2     instructing the witness not to answer the question.

3          Q     With respect to the source of the spill on

4     the San Gregorio Ranch, did you talk to any of the -- to

5     Daniel Airey?

6               MR. HOLZER:  Objection, privileged.  I'm

7     instructing the witness not to answer the question.

8          Q     With respect to the source of the spill on

9     the San Gregorio Ranch, did you talk to anyone other than

10    the petitioning creditors, Craig Smith, and Mr. Daniel

11    Airey?

12              MR. HOLZER:  Objection, privileged.  I'm

13    instructing the witness not to answer the question.

14         Q     What is the element of damage in the proofs

15    of claim for the spill?

16              MR. HOLZER:  Objection, privileged.  I'm

17    instructing the witness not to answer the question.

18         Q     Is the element of damage for the proof -- for

19    the cost of the spill include the removal of dirt from the

20    San Gregorio Ranch?

21              MR. HOLZER:  Objection, privileged.  I'm

22    instructing the witness not to answer the question.

23         Q     With respect to Exhibit No. 1 to the proofs

24    of claim, would you look at the top of the page and read

25    that into the record, this portion right here (indicating).

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                                  27

1          A        "Cost of removal and replacement of affected

2     soil under saltwater disposal agreement."

3          Q        Okay.  What does the cost refer to?

4                   MR. HOLZER:  Objection, privileged.  I'm

5     instructing the witness not to answer the question.

6          Q        What does the affected soil refer to?

7                   MR. HOLZER:  Objection, privileged.  I'm

8     instructing the witness not to answer the question.

9          Q        What does the saltwater disposal agreement

10    refer to?

11                  MR. HOLZER:  Objection, privileged.  I'm

12    instructing the witness not to answer the question.  I'm

13    sorry.  I jumped on top.

14         Q        Did you talk to anyone about the cost of

15    removal and replacement of the affected soil -- No.

16    Actually, did you talk to the petitioning creditors about

17    the cost of removal and replacement of the affected soil

18    under the saltwater disposal agreement before you signed

19    it?

20                  MR. HOLZER:  Objection, privileged.  I'm

21    instructing the witness not to answer the question.

22         Q        Did you talk to Mr. Craig Smith about that

23    issue?

24                  MR. HOLZER:  Objection, privileged.  I'm

25    instructing the witness not to answer the question.

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                    28

1        Q      Did you talk to Mr. Daniel Airey about that

2    issue?

3                       MR. HOLZER:   Objection, privileged.   I'm

4    instructing the witness not to answer the question.

5        Q      Did you talk to anyone other than the

6    petitioning creditors, Craig Smith and Daniel Airey, with

7    respect to that.

8                       MR. HOLZER:   Objection, privileged.   I'm

9    instructing the witness not to answer the question.

10       Q      All right.  Would you look at the bottom of

11   the Exhibit No. 1?  Can you read that in percentage of

12   cost --  Well, actually, would you read that in, please,

13   what it's labeled?

14                      MR. HOLZER:   What are you asking him to

15   read?

16       A      The label above the column, which -- of

17   numbers in the middle that begins with 15 million dollars?

18       Q      Yeah, uh-huh.

19       A      "Percentage of cost of removal and

20   replacement."

21       Q      Okay.  All right.  What did you do to --  Who

22   did you talk --  Did you talk to the petitioning creditors

23   prior to filing the lawsuit to establish the percentage of

24   cost of the removal and replacement as set forth on this

25   table and associated with their names?

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                                        29

1              MR. HOLZER:  Objection, privileged.  I'm

2    instructing the witness not to answer the question.

3         Q      Did you talk to Craig Smith about that same

4    issue?

5              MR. HOLZER:  Objection, privileged.  I'm

6    instructing the witness not to answer the question.

7         Q      Did you talk to Daniel Airey about that

8    issue?

9              MR. HOLZER:  Objection, privileged.  I'm

10   instructing the witness not to answer the question.

11        Q      Did you talk to anyone else about that issue?

12             MR. HOLZER:  Objection, privileged.  I'm

13   instructing the witness not to answer the question.

14        Q      At the time that you filed the proofs of

15   claim, were you aware that Craig Smith owned any portion of

16   the San Gregorio Ranch as set forth on Exhibit 2?

17             MR. HOLZER:  Objection, privileged.  I'm

18   instructing the witness not to answer the question.

19        Q      Does Craig Smith own any of the surface on

20   Exhibited 2, which we've referred to as the San Gregorio

21   Ranch?

22             MR. HOLZER:  If you know.

23        A      I have been told by Craig Smith and by

24   Mr. Garza that Craig Smith owns some of the surface of

25   those tracts.

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                                        30

1          Q     Can you mark on this Exhibit 2 the surface

2     that he owns?

3          A     I cannot because I don't know specifically

4     what, out of those tracts, he owns.  I understand he owns

5     some, but I don't know what the extent of that ownership

6     is.

7          Q     Do you know how many acres he owned?

8          A     At a deposition yesterday, Mr. Garza

9     testified that he owned all of it, except for approximately

10    a 70 acre tract that was owned jointly between Mr. Smith

11    and the other nine potential owners.  So, that would be

12    whatever 70 less those two added together would be.  He did

13    not say, at that deposition, what percentage he believed

14    was owned by Mr. Smith on an undivided basis on that 70

15    acres, so I don't know what Mr. Smith claims or what they

16    believe, and I've never looked at any of the underlining

17    titles.

18         Q     So, as to the portion of the San Gregorio

19    Ranch on Exhibit B that's undivided, you have no knowledge

20    about the extent of Mr. Smith's ownership, other than it's

21    an undivided interest?

22               MR. HOLZER:  Yeah.  Objection,

23    privileged.  I'm instructing the witness not to -- that's

24    already been on there.

25         Q     Do you have any evidence which would show

1    that what Mr. A.F. Garza -- No. I'm sorry. I asked a bad

2    question. Have you talked to anyone about the undivided

3    ownership on the San Gregorio Ranch?

4              MR. HOLZER: Objection, privileged. I'm

5    instructing the witness not to answer the question.

6         Q    Have you talked to Craig Smith about his

7    ownership of the surface on the San Gregorio Ranch?

8              MR. HOLZER: Objection, privileged. I'm

9    instructing the witness not to answer the question.

10        Q    Have you talked to Mr. Craig Smith about his

11   undivided ownership on the San Gregorio Ranch?

12             MR. HOLZER: Objection, privileged. I'm

13   instructing the witness not to answer the question.

14        Q    Have you talked to anyone else about -- Have

15   you talked to any of the petitioning creditors about Craig

16   Smith's undivided ownership on the San Gregorio Ranch?

17             MR. HOLZER: Objection, privileged. I'm

18   instructing the witness not to answer the question.

19        Q    And have you talked to anyone else about

20   Craig Smith's ownership of an undivided interest on the San

21   Gregorio Ranch?

22             MR. HOLZER: Objection, privileged. I'm

23   instructing the witness not to answer the question.

24        Q    Did you review any documents to establish the

25   percentages associated with the petitioning creditors'

Harlin C. Womble, Jr.                                                        32

1   names as to the percentage of cost and removal and

2   replacement on Exhibit 2?

3                MR. HOLZER:  Objection, privileged.  I'm

4   instructing the witness not to answer the question.

5        Q      Have you looked at any conveyance documents

6   into Craig Smith with respect to the surface of the San

7   Gregorio Ranch?

8                MR. HOLZER:  Objection, privileged.  I'm

9   instructing the witness not to answer the question.

10       Q      Have you looked at any documents which refer

11  to the claims asserted by the petitioning creditors which

12  relate to the conveyance documents into Craig Smith?

13               MR. HOLZER:  Objection, privileged.  I'm

14  instructing the witness not to answer the question.

15       Q      Have you talked to the petitioning creditors

16  about -- Well, let me -- On the proofs of claim, is Greg

17  (sic) Smith referenced?

18       A      No.

19       Q      That's one of my failers in life, failing to

20  differentiate between Craig and Greg.  Colon and Collin, I

21  have the same problem with that, too.

22       A      A minor flaw, I think.

23       Q      A minor flaw.  I think that's caused by

24  mothers, not by me.  I want to blame that on them.  Did you

25  discuss, with anyone, the ownership of the surface of the

Harlin C. Womble, Jr.                                                    33

1    San Gregorio Ranch before you filed the proofs of claim?

2                 MR. HOLZER:  Objection, privileged.  I'm

3    instructing the witness not to answer the question.

4         Q     Did you discuss, with Craig Smith, the

5    ownership of the San Gregorio Ranch before you signed the

6    proofs of claim?

7                 MR. HOLZER:  Objection, privileged.  I'm

8    instructing the witness not to answer the question.

9         Q     Did you talk to the petitioning creditors

10   about the ownership of the surface of the San Gregorio

11   Ranch before you filed the proofs of claim?

12                MR. HOLZER:  Objection, privileged.  I'm

13   instructing the witness not to answer the question.

14        Q     Did you review any documents to establish the

15   ownership of the San Gregorio Ranch before you signed the

16   proofs -- the surface of the San Gregorio Ranch before you

17   signed the proofs of claim?

18                MR. HOLZER:  Objection, privileged.  I'm

19   instructing the witness not to answer the question.

20        Q     Do you know if in the Bellows -- in the

21   lawsuit filed by the petitioning creditors against Bellows

22   Operating Company, Limited, that the petitioning creditors

23   sought to recover for the cost of removal and replacement

24   of affected soil?

25                MR. HOLZER:  Objection, privileged.  I'm

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.

34

1    instructing the witness not to answer the question.

2         Q     Do you know if Daniel Airey provided an

3    expert report in the lawsuit filed by the petitioning

4    creditors against the Bellows -- Now I've forgotten the

5    name of the company -- Dewey Bellows Operating Company,

6    Limited?

7              MR. HOLZER:  Objection, privilege.  I'm

8    instructing the witness not to answer the question.

9         Q     Prior to the time that you signed the proofs

10   of claim, did you have any conversation with Daniel Airey.

11             MR. HOLZER:  Objection, privileged.  I'm

12   instructing the witness not to answer the question.

13        Q     Prior to the filing of the proofs of claim,

14   did you ask Daniel Airey to do any work on the San Gregorio

15   Ranch?

16             MR. HOLZER:  Objection, privileged.  I'm

17   instructing the witness not to answer the question.

18        Q     When was the first time that you talked with

19   Daniel Airey with respect to the petitioning creditors'

20   claims against -- in this bankruptcy and adversary

21   proceeding?

22             MR. HOLZER:  Objection, privileged.  I'm

23   instructing the witness not to answer the question.

24             MR. ANDERSON:  So you think when he

25   first talked to his expert is privileged?

Harlin C. Womble, Jr.                                          36

1          A     I do.

2          Q     Good.  Would you look at the portion of the

3     exhibit that is entitled "Gross receipts to Dewey Bellows

4     Operating Company, Limited from Saltwater Disposal

5     Agreement"?

6          A     Yes.  I'm looking at that portion.

7          Q     Okay.  Would you look at line number -- year

8     number 2003?

9          A     I'm looking at that.

10         Q     Did you talk to the petitioning creditors

11    before you signed the proof of claim with this gross

12    receipt amount stated thereon?

13               MR. HOLZER:  Objection, privileged.  I'm

14    instructing the witness not to answer the question.

15         Q     Did you talk to Craig Smith before you signed

16    the proofs of claim with respect to this amount?

17               MR. HOLZER:  Objection, privileged.  I'm

18    instructing the witness not to answer the question.

19         Q     Did you talk to anyone other than the

20    petitioning creditors and Craig Smith with respect to this

21    amount?

22               MR. HOLZER:  Objection, privileged.  I'm

23    instructing the witness not to answer the question.

24         Q     Did you review --  Do you have any documents

25    in your possession which support this number?

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

1                    MR. HOLZER:  Objection, privileged.  I'm

2      instructing the witness not to answer the question.

3            Q      Mr. Womble, do you keep notes of your

4      conversations with experts in the course of litigation?

5                    MR. HOLZER:  Objection, privileged.  I'm

6      instructing the witness not to answer the question.

7            Q      Now, Mr. Womble, let's look at the line with

8      the year reference of 2004, okay?

9            A      Yes, sir.

10           Q      All right?  And I'm going to ask you a few

11     questions about that.  With respect to the gross receipts

12     referenced with respect to 2004, did you talk to the

13     petitioning creditors before you signed the proof of claim

14     with this amount in it?

15                   MR. HOLZER:  Objection, privileged.  I'm

16     instructing the witness not to answer the question.

17           Q      Did you talk to Craig Smith about this?

18                   MR. HOLZER:  Objection, privileged.  I'm

19     instructing the witness not to answer the question.

20           Q      Did you talk to anyone else about this?

21                   MR. HOLZER:  Objection, privileged.  I'm

22     instructing the witness not to answer the question.

23           Q      Did you obtain any documents with respect to

24     this amount before you signed it?

25                   MR. HOLZER:  Objection, privileged.  I'm

Harlin C. Womble, Jr.                                                    38

1    instructing the witness not to answer the question.

2         Q    Did you review any documents with respect to

3    this amount before you signed it?

4              MR. HOLZER:  Objection, privileged.  I'm

5    instructing the witness not to answer the question.

6         Q    Would you look at the years 2005 through 2007

7    on this exhibit, please?

8         A    Yes.  I'm looking at them now.

9         Q    Okay.  Did you talk to the petitioning

10   creditors about these amounts before you signed them?

11             MR. HOLZER:  Objection, privileged.  I'm

12   instructing the witness not to answer the question.

13        Q    Before you signed this proof of claim with

14   this amount in it, had you visited with the petitioning

15   creditors at all?

16             MR. HOLZER:  Objection, privileged.  I'm

17   instructing the witness not to answer the question.

18        Q    Did you obtain any documents with respect to

19   these amounts before you signed the proof of claim?

20             MR. HOLZER:  Objection, privileged.  I'm

21   instructing the witness not to answer the question.

22        Q    Did you review any documents with respect to

23   these amounts before you signed the proof of claim?

24             MR. HOLZER:  Objection, privileged.  I'm

25   instructing the witness not to answer the question.

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

1          Q      I need to take a break.  I'll be right back.

2                 VIDEOGRAPHER:  10:02.  Off the record.

3                        (A BRIEF RECESS WAS TAKEN.)

4                 VIDEOGRAPHER:  Back on record.  It's

5      10:19.  This is disc two.

6          Q      (By Mr. Anderson)   Does anyone else beside

7      the petitioning creditors and Smith own an interest in the

8      San Gregorio Ranch?

9          A      I don't know.

10         Q      Will you produce the conveyance documents in

11     to Mr. Smith without a motion to compel?

12                MR. HOLZER:  Objection.

13                MR. ANDERSON:  And what's the objection?

14                MR. HOLZER:  Well, I don't have to

15     explain my objection.

16                THE WITNESS:  Are you instructing me not

17     to answer?

18                MR. HOLZER:  No.  I'm not.  I just

19     objected.

20         A      I don't have the conveyance documents to

21     produce.

22         Q      Did you work on providing the answers to the

23     discovery responses filed by Bellows in this adversary

24     proceeding?

25                MR. HOLZER:  Objection, privileged.  I'm

1   instructing the witness not to answer the question.

2        Q     All right.  The current discovery responses

3   have not been verified.  Are the petitioning creditors

4   going to provide a verification with respect to their

5   interrogatory responses --

6                    MR. HOLZER:  Objection.

7        Q     -- without a motion to compel?

8                    MR. HOLZER:  Objection, privileged.  I'm

9   instructing the witness not to answer the question.

10       Q     Have you agreed to provide, to the Bellows

11  parties in this lawsuit, a signed verification with respect

12  to the discovery in this lawsuit as you, Mr. Womble?

13       A     I don't remember whether I have or not.  I

14  believe there has been some discussion of that, but I don't

15  remember whether I have made that representation or not

16  specifically.  I may have.  I don't know.  Sitting here

17  today, I just don't know.  Certainly, if you get an e-mail

18  to that effect or something, I did it.

19       Q     Are the present discovery responses verified

20  as filed by the petitioning creditors in this lawsuit?

21                   MR. HOLZER:  Objection, privileged.  I'm

22  instructing the witness not to answer the question.

23                   MR. ANDERSON:  What's privileged about

24  whether or not it's verified?

25                   MR. HOLZER:  Well, you can answer --

Harlin C. Womble, Jr.                                                          41

1    You could ask a better question.

2                    MR. ANDERSON:  Let me try it again.

3        Q    (By Mr. Anderson)   Are the discovery

4    responses filed in this case by the petitioning creditors

5    verified?

6                    MR. HOLZER:  And, Robert, when you say

7    filed in this case, you mean supplied to your client?

8                    MR. ANDERSON: Right.  I do.

9                    MR. HOLZER:  Okay.  That's the better

10   question.

11       A    I don't know.

12       Q    Are discovery responses required to be

13   verified?

14                   MR. HOLZER:  Objection.

15       A    Yes.

16       Q    Your contract to represent the PC's, are you

17   being paid on an hourly rate to represent the petitioning

18   creditors?

19                   MR. HOLZER:  Objection, privileged. I'm

20   instructing him not to answer the question.

21       Q    Are you -- Your contract with the

22   petitioning creditors in this case, is it a contingent fee

23   agreement?

24                   MR. HOLZER:  Objection, privileged.  I'm

25   instructing the witness not to answer the question.

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.                                                      42

1          Q      Is there a fee sharing arrangement between

2    your offices and Mr. Smith with respect to the -- any

3    contingent fee arrangement in this lawsuit?

4                 MR. HOLZER:  Objection, privileged.  I'm

5    instructing the witness not to answer the question.

6          Q      Do you have a fee sharing arrangement with

7    anyone other than Mr. Smith in this lawsuit?

8                 MR. HOLZER:  Objection, privileged.  I'm

9    instructing the witness not to answer the question.

10         Q      What is Mr. Smith's potential recovery as a

11   result of the proofs of claims which are filed in this

12   lawsuit?

13                MR. HOLZER:  Objection, privileged.  I'm

14   instructing the witness not to answer the question.

15         Q      And you know Mr. Smith is Craig Smith, right?

16         A      When you use Mr. Smith, I'll assume you're

17   talking about Mr. Craig Smith.

18         Q      Thank you.  Does Mr. Smith have a fee

19   agreement with the petitioning creditors with respect to

20   this lawsuit?

21                MR. HOLZER:  Objection, privileged.  I'm

22   instructing the witness not to answer the question.

23         Q      Did you assist, in any way, in the

24   preparation of the responses to discovery in this lawsuit?

25                MR. HOLZER:  Objection, privileged.  I'm

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

Harlin C. Womble, Jr.

43

1    instructing the witness not to answer the question.

2          Q      Did you provide the petitioning creditors

3    with a copy of the discovery which was served on the PC's

4    by Bellows in this lawsuit?

5                 MR. HOLZER:  Objection, privileged.  I'm

6    instructing the witness not to answer the question.

7          Q      Are you aware of any other attorneys' fees

8    contracts with respect to the -- this lawsuit, other than

9    the contract that you have with the petitioning creditors?

10                MR. HOLZER:  Objection, privileged.  I'm

11   instructing the witness not to answer the question.

12         Q      Do you have an agreement with the law offices

13   of Michael Schmidt with respect to the sharing of fees in

14   this lawsuit?

15                MR. HOLZER:  Objection, privileged.  I'm

16   instructing the witness not to answer the question.

17         Q      Do you know if the PC's have ever had a

18   contingent fee agreement -- an attorney's fees agreement

19   with Ramon Garcia, a lawyer in the valley?

20                MR. HOLZER:  Objection, privileged.  I'm

21   instructing the witness not to answer the question.

22         Q      Do you know if the petitioning creditors ever

23   had a contingent fee agreement with Michael Lee?

24                MR. HOLZER:  Objection, privileged.  I'm

25   instructing the witness not to answer the question.

Harlin C. Womble, Jr.                                                44

```
 1          Q     Do you know if the petitioning creditors ever

 2     had a attorney's fees agreement with George Powell?

 3                     MR. HOLZER:  Objection, privileged.  I'm

 4     instructing the witness not to answer the question.

 5          Q     Do you know if Ramon Garcia ever provided

 6     legal services to the petitioning creditors?

 7                     MR. HOLZER:  Objection privileged.  I'm

 8     instructing the witness not to answer the question.

 9          Q     Do you know if Mike Lee ever provided legal

10     services to the petitioning creditors?

11                     MR. HOLZER:  Objection, privileged.  I'm

12     instructing the witness not to answer the question.

13          Q     Do you know if George Powell ever provided

14     legal services to the petitioning creditors?

15                     MR. HOLZER:  Objection, privileged.  I'm

16     instructing the witness not to answer the question.

17          Q     Now, turning back to the petitioning

18     creditors' proofs of claims -- I think that's Exhibit 1,

19     right?

20          A     Yes, sir.

21          Q     Can you identify the basis for --  Looking at

22     Exhibit 1 to each of the proofs of claim, can you identify

23     the basis for the calculation of $75,000 on that exhibit?

24                     MR. HOLZER:  Objection.

25          Q     75 million dollars on that exhibit?
```

1            MR. HOLZER:  Objection, privileged.  I'm

2    instructing the witness not to answer the question.

3          Q      Continuing on with Exhibit 1, can you

4    identify the basis for the $1,665,432.16?

5            MR. HOLZER:  Objection, privileged.  I'm

6    instructing the witness not to answer the question.

7          Q      Continuing on with that exhibit, can you

8    identify the basis for the percentages associated with each

9    of the petitioning creditors' names on this chart?

10            MR. HOLZER:  Objection, privileged.  I'm

11    instructing the witness not to answer the question.

12          Q      Continuing on with this claim, can you

13    identify the percentage of cost and removal associated with

14    each one of the petitioning creditors' names on this chart?

15            MR. HOLZER:  Objection, privileged.  I'm

16    instructing the witness not to answer the question.

17                      (EXHIBIT NO. 4 WAS MARKED

18                       FOR IDENTIFICATION.)

19          Q      We're going to look over here at -- How do I

20    get this to you?  Can I just flip to it for you, Harlin?

21    What's the Exhibit 4?

22          A      4.

23          Q      I've identified an additional exhibit for

24    you, Exhibit 4.  Have you ever looked at this particular

25    document?

Harlin C. Womble, Jr.

47

1      of the Lee firm are in columns?

2          Q      Uh-huh.

3          A      The columns are headed, it looks like,

4      Author, slash -- author, slash, creator.  In that column,

5      Craig Smith's name appears.  In the column initial, in

6      parenthesis, recipient, the name of the law firm -- the Lee

7      firm is represented.

8          Q      Uh-huh.  Craig Smith is the lawyer who you

9      are working with in this file; is that correct?

10         A      He is.

11         Q      And the Lee firm, is that Mike Lee's firm

12     that is involved in representation of the debtor's estate?

13         A      I would believe so.

14         Q      All right.  Who is Mr. Lee representing at

15     this time?

16                MR. HOLZER:  Objection, privileged.  I'm

17     going to instruct the witness not to answer the question.

18         Q      10/8/2010, who does Mr. Lee represent?

19                MR. HOLZER:  Objection, privileged.  I'm

20     instructing the witness not to answer the question.

21         Q      The second document is a document from the

22     Lee firm to George Powell.  It has a Bates stamp number of

23     18 through -- golly, that's hard to see, isn't it?

24                MR. HOLZER:  It looks like 18 to 38 to

25     me.

Harlin C. Womble, Jr.

48

1       Q      Let's go along with that.  Are you okay with

2    that, Harlin?

3       A      Sure.  It looks like 18 to 38 to me.

4       Q      Yeah.  And a date of 10/11/2020 (sic),

5    correct?

6                   MR. HOLZER:  Objection.

7                   MR. ANDERSON:  I'm just asking him with

8    respect to the document he's looking at, all right?

9                   MR. HOLZER:  Right.

10      A      It's 10/11/2010, not 2020.

11      Q      Thank you.  Yeah.  There's no 2020 yet, is

12   there?

13      A      Not here.

14      Q      And the author is Craig Smith and the firm is

15   Mr. Lee's firm again?

16      A      The initial recipient is the Lee firm, a

17   representative of the Lee firm here.

18      Q      Who is Mr. Lee representing at this time?

19                  MR. HOLZER:  Objection, privileged.  I'm

20   instructing the witness not to answer the question.

21      Q      There is a -- apparently -- an additional

22   person named George Powell involved.  Who is Mr. Powell?

23      A      I think Mr. Powell is a lawyer, but I don't

24   know him particularly well.

25      Q      Is he representing the petitioning creditors?

Harlin C. Womble, Jr.                                                          49

```
 1              MR. HOLZER:  Objection, privileged.  I'm

 2   instructing the witness not to answer the question.

 3        Q     At the time of this e-mail, was he

 4   representing the petitioning creditors?

 5              MR. HOLZER:  Objection, privileged.  I'm

 6   instructing the witness not to answer the question.

 7        Q     At the time of this e-mail, who was he

 8   representing?

 9              MR. HOLZER:  Objection, privileged.  I'm

10   instructing the witness not to answer the question.

11        Q     When did Mike Lee become the attorneys for

12   debtors in this lawsuit?

13              MR. HOLZER:  Objection, privileged.  I'm

14   instructing the witness not to answer the question.

15        Q     When did the Court order Mr. Lee to -- enter

16   an order, authorizing Mr. Lee to represent the petitioning

17   creditors?

18              MR. HOLZER:  You can answer if you know

19   that.

20        A     I don't know.

21        Q     Okay.  Let me go ahead and mark it.

22                        (EXHIBIT NO. 5 WAS MARKED

23                        FOR IDENTIFICATION.)

24        A     Do we have an outstanding question?

25        Q     No.  Not that I'm aware.
```

Harlin C. Womble, Jr.                                                    51

```
 1         A      Yes.

 2         Q      And what is the date that that order was

 3    signed?

 4                       MR. HOLZER:  We stipulated to the dates.

 5                       MR. ANDERSON:  So that stipulation still

 6    stands?

 7                       MR. HOLZER:  With respect to that order.

 8                       MR. ANDERSON:  Thank you.

 9         Q      There is a joint defense assertion in this

10    lawsuit.  When did that joint defense develop between the

11    petitioning creditors and the trustee's office in this

12    case?

13                       MR. HOLZER:  Objection, privileged.  I'm

14    instructing the witness not to answer the question.

15         Q      When did the trustee's office and Mr. Craig

16    Smith and/or Mr. Womble meet and agree to the joint defense

17    privilege with respect to this case?

18                       MR. HOLZER:  Objection, privileged.  I'm

19    instructing the witness not to answer the question.

20         Q      (By Mr. Anderson)   In the context of the

21    joint defense, has there been an agreement reduced to

22    writing between Mr. Schmidt's office and Mr. -- and your

23    offices and Mr. Smith's office?

24                       MR. HOLZER:  Objection, privileged.  I'm

25    instructing the witness not to answer the question.
```

Harlin C. Womble, Jr.                                                           52

1          Q        With respect to the joint defense that's been

2     asserted in this -- privileged in this case, is there any

3     limitation on that joint defense privilege asserted in this

4     lawsuit that you're aware of?

5                   MR. HOLZER:  Objection, privileged.  I'm

6     instructing the witness not to answer the question.

7          Q        Is it your position that all of the

8     communications prior to the two -- Mr. Lee's office or to

9     Mr. Powell's office prior to the entry of Exhibit 5 are

10    privileged because of the joint defense privilege?

11                  MR. HOLZER:  Objection, privileged.  I'm

12    instructing the witness not to answer the question.

13         Q        Turning back to the original bank stamped

14    document 1 through 17 dated 10/8/2010, have you seen that

15    document?

16                  MR. HOLZER:  Objection, privileged.  I'm

17    instructing the witness not to answer the question.

18         Q        Can you tell us what those documents discuss

19    and what are contained in those documents?

20                  MR. HOLZER:  Objection, privileged.  I'm

21    instructing the witness not to answer the question.

22         Q        With respect to the Bates stamp documents, I

23    think we said 18 through 38, dated 10/11/2010, have you

24    seen that document?

25                  MR. HOLZER:  Objection, privileged.  I'm

Harlin C. Womble, Jr.                                        53

1    instructing the witness not to answer the question.

2           Q      Can you tell us what is the contents of those

3    documents?

4                  MR. HOLZER:  Objection, privileged.  I'm

5    instructing the witness not to answer the question.

6           Q      Let's see if we can shorten this part.

7                  MR. HOLZER:  All for it.

8                  MR. ANDERSON:  Mr. Holzer, will you --

9    is it -- your position going to be that with respect to the

10   questions I ask about the correspondence between your

11   firm's offices and Craig Smith's offices to Mike Lee and

12   George Powell, that you're going to object to those

13   questions on the basis of privilege, whatever those

14   questions are?

15                 MR. HOLZER:  I'm going to -- Robert, I

16   haven't looked at this before, so -- but I am going to

17   object to any questions that you ask of Mr. Womble that

18   concern his review of, his knowledge of, his consideration

19   of, any documents in this case period.

20                 MR. ANDERSON:  And that would apply to

21   these documents that are listed in this privileged log in

22   Exhibit --

23                 MR. HOLZER:  Right.

24                 MR. ANDERSON:  -- 4?

25                 MR. HOLZER:  Right.  Now, let me say

CERTIFIED REPORTING & VIDEO, INC.
615 N. Upper Broadway, Suite 1661

1    that, you know, we've go to go document by document.  I'm

2    not saying that I will always object.

3                    MR. ANDERSON:  Sure.

4                    MR. HOLZER:  But, as a general basis,

5    yes.  You will always -- Any questions you ask about --

6    Mr. Womble in this deposition regarding any documents on

7    this 34 page list of .6. print privilege law, I'm going to

8    object.

9                    MR. ANDERSON:  I object to referring to

10   the size of the print.

11                   MR. HOLZER:  Okay.  It's five point

12   print.

13                   MR. ANDERSON:  Off the record.

14                       (A BRIEF RECESS WAS TAKEN.)

15                   MR. ANDERSON:  At this point, we are

16   going to recess --

17                   MR. HOLZER:  Robert, did you want this

18   on the record?

19                   MR. ANDERSON:  No.  I do not want a

20   video of us talking.  He wants on.  It's the rock star in

21   him.  You're done, Harlin, unless you want to be talking.

22   You're done.  Let's go.  Let me put this.  We're recessing

23   Harlin's deposition at this point in time.  We are not

24   ending Harlin's deposition at this point in time.  We

25   believe that -- two things:  We believe that after the