IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
12/19/2014

| | | |
|---|---|---|
| IN RE: § | | |
| GABRIEL G. RODRIGUEZ § | CASE NO: 12-07018 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| MICHAEL SCHMIDT § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 11-07012 | |
| § | | |
| APOLINAR RODRIGUEZ, *et al* § | | |
| Defendant(s) § | | |

### MEMORANDUM OPINION

Dewey Bellows Operating Company, Ltd.'s Motion for Summary Judgment, (ECF No. 239), is granted in part and denied in part. Petitioning Creditors are barred from recovery of saltwater disposal revenues accruing after the spill on San Gregorio Ranch. To the extent the motion seeks to bar recovery for saltwater disposal revenues accruing before the spill, the motion is denied.

### Background

The procedural history of this case and the accompanying litigation is extremely convoluted. The Court issued a Memorandum Opinion on November 16, 2012 which dealt extensively with the underlying events that preceded the involuntary bankruptcy of Gabriel G. Rodrgriguez. (ECF No. 129); *Rodriguez v. Rodriguez (In re Rodriguez)*, 2012 WL 5830639 (Bankr. S.D. Tex. Nov. 16, 2012). It is not necessary to repeat this history in detail again. However, the Court will summarize the history of the involuntary bankruptcy, the pre-petition state court appellate rulings, and the state court litigation between the Petitioning Creditors and Dewey Bellows Operating Company, Ltd.

*Land Dispute Between Debtor and Plaintiffs*

On January 22, 1943, Maria Lopez de Peña devised nine tracts of land to her nephew Santiago Rodriguez, the adoptive father of Debtor Gabriel Rodriguez. *Garza v. Rodriguez*, 2007 WL 2116411 at *1 (Tex. App. July 25, 2007) (*Garza III*). The terms of the will stated that if Santiago died without lawful issue of his body, the land would pass to Eusebia Lopez de Rodriguez (Maria's sister) or her heirs and descendants. *Id.* Santiago died intestate on October 19, 1984. He was survived only by his wife and Debtor, who remained in possession of the nine tracts of land. *Id.* On July 8, 1986, the heirs and descendants of Eusebia Rodriguez (the "Petitioning Creditors") filed suit in Starr County District Court seeking a declaration that they had superior title to the nine tracts of land. (ECF No. 47-1). In response, Debtor filed a probate action in the Starr County Court at Law (sitting as the Starr County Probate Court) on August 4, 1986. (ECF No. 47-4). Debtor obtained an order from the Starr County Court at Law granting he and his mother equal shares of Santiago Rodriguez's estate and appointing him independent administer of the estate. (ECF No. 72-3 at 3).

Petitioning Creditors' suit in the Starr County District remained active, although it is unclear what happened in the intervening years. Twelve years after the Court at Law's order, the District Court dismissed Petitioning Creditors' suit for lack of jurisdiction on June 10, 1998. (ECF No. 47-12).[1] On July 14, 1998, Petitioning Creditors refiled in the Starr County Court of Law. (ECF No. 47-2). The second lawsuit contained the same prayer for relief that Petitioning Creditors had superior title to Debtor, but also sought additional damages for wrongfully diverted oil and gas royalties. *Id.* at 6. The Starr County Court of Law dismissed the second lawsuit for lack of jurisdiction. On appeal, the Texas Court of Appeals reversed the dismissal after finding

---

[1] The Texas Court of Appeals affirmed the dismissal. *Garza v. Rodriguez*, 18 S.W.3d 694 (Tex. App. 2000) (*Garza I*).

the Court of Law had jurisdiction, and remanded for further consideration. *Garza v. Rodriguez*, 87 S.W.3d 628 (Tex. App. 2002) (*Garza II*).

On remand, the Starr County Court of Law granted Petitioning Creditors' summary judgment motion that they held superior title to the nine tracts of land. (ECF No. 47-5). The Court of Law also severed the title action into a new case (Cause No. PR-98-37(B)), while keeping all other claims for royalties in the original case (Cause No. PR-98-37). (ECF No. 47-5). The Texas Court of Appeals affirmed the grant of summary judgment in the title action. *Garza v. Rodriguez*, 2007 WL 2116411 (Tex. App. July 25, 2007) (*Garza III*). The court held that Maria Peña granted Santiago Rodriguez the land in fee simple subject to an executory limitation. *Id.* at *2. Once the stated event in the will occurred, i.e. Santiago dying without "lawful issue of his body," title to the land vested in the Petitioning Creditors.[2] *Id.* The affirmation by the Court of Appeals of judgment for Petitioning Creditors resolved the underlying land dispute.

*Salt Water Disposal Agreement and Additional Litigation*

Although it was ultimately determined that Debtor was not the rightful landowner, he possessed the land from Santiago Rodriguez's death until some point after December 8, 2005. On October 22, 2002, Debtor entered into a Saltwater Disposal Agreement ("SWDA") with Dewey Bellows Operating Company, Ltd. (ECF No. 30, Ex. B-1). Under the SWDA's terms, Debtor leased two acres of San Gregorio Ranch to Dewey Bellows to operate a commercial saltwater disposal system. (ECF No. 30, Ex. B-1). The SWDA contained a provision requiring Dewey Bellows to pay Debtor all damages sustained by the operations and repair all damage

---

[2] Although under modern Texas law the phrase "heir of his body" includes adopted children such as Debtor, this was not true when the will was executed in 1946. *Garza III*, 2007 WL 2116411 at *4.

done to the land. (ECF No. 47-14 at 3). The SWDA also contained the following Indemnification Provision:

> [Lessee] shall indemnify and hold lessor harmless from all loss and liability arising from lessee's operations regardless of whether it arises from lessor's acts of negligence or that of others. Gerality [sic] of this lessee shall indemnify and hold lessor harmless from all loss and liability for claims asserted to arise out of lessee's operations with respect to: (a) discharge of saltwater, oil, or of hazardous substances as defined by any federal, state or local environmental law, or the presence of hazardous substances affecting the leased premises whether or not the same originates or emanates from the leased premises or any continuous property owned or occupied by lessee: and (b) removal costs, incurred or required by federal state of [sic] local government with respect to saltwater, oil or hazardous substances.

*Id.*

At some point in 2007 or early 2008, saltwater from the disposal operation spilled onto San Gregorio Ranch. (ECF No. 30 at 2). The parties agree that the spill caused extensive damage to the ranch. In light of the additional damages caused by the spill, Petitioning Creditors amended their suit against Debtor to include causes of action of negligence, trespass, and waste. (ECF No. 47-3 at 6-7). In September 2007, Petitioning Creditors also filed suit against Dewey Bellows Operating Company, Ltd., Dewey Bellows (the owner of the company), and Gary Bellows (the owner's son). (ECF No. 46 at 10). The original petition was filed before the spill's discovery, but was amended several times. The fourth amended petition alleged causes of action for: (i) negligence, gross negligence, and waste; (ii) trespass; and (iii) fraudulent transfers. (ECF No. 30, Ex. B-6 at 7-11).

The case was tried before a jury in September 2009. In its jury charge, the court asked the jury two questions related to negligence. The first question read as follows:

> Did the negligence, if any, of Dewey Bellows Operating Company Ltd. proximately cause damage to San Gregorio Ranch or its owners?

>For this question only Dewey Bellows Operating Company Ltd. was negligent if—
>
>   a. Dewey Bellows Operating Company Ltd. undertook to perform services it knew or should have known were necessary for the protection of San Gregorio Ranch, and
>
>   b. Dewey Bellows Operating Company Ltd. failed to exercise reasonable care in performing these services, and
>
>   c. Performance of these services by Dewey Bellows Operating Company Ltd. increased the risk of damage to San Gregorio Ranch.

(ECF No. 30-5 at 21). The jury answered this question in the negative.

>The second negligence question asked:
>
>Did the negligence, if any, of Dewey Bellows Operating Company Ltd. proximately cause damage to San Gregorio Ranch or its owners?
>
>For this question only "Negligence" means failure to use ordinary care, that is, failing to do that which a reasonably prudent Operator of ordinary prudence would have done under the same or similar circumstances or doing that which an Operator of ordinary prudence would not have done under the same or similar circumstances.

(ECF No. 30-5 at 23). The jury answered this question in the affirmative and awarded Petitioning Creditors $400,000 for the reduction in fair market value of the property. *Id.* Finally, the jury was asked the following regarding trespass:

>Did Dewey Bellows Operating Company Ltd. commit a trespass on San Gregorio Ranch? You are instructed Dewey Bellows Operating Company Ltd. committed a trespass if it intentionally:
>
>(a) entered San Gregorio ranch, or caused a thing or third person to do so, or
>
>(b) remained on San Gregorio Ranch, or
>
>(c) failed to remove from San Gregorio Ranch a thing which it is under a duty to remove.

*Id.* at 25. The jury also answered this question in the negative.[3]

On January 20, 2010, the state court issued a final judgment in the case. In addition to the $400,000 jury verdict, the state court granted Petitioning Creditors an award of $81,041.86. (ECF No. 30-5 at 32). Both sides stipulate that the $81,041.86 represents Dewey Bellows's gross revenues of the saltwater disposal operation for the one month period following service of the state court lawsuit upon Dewey Bellows. (ECF No. 30 at 2). Dewey Bellows paid the judgment and received a complete release of judgment on July 21, 2010. (ECF No. 30-5 at 34).

*Debtor's Involuntary Bankruptcy*

Throughout the entire litigation with Dewey Bellows, Petitioning Creditors had an active lawsuit against Debtor which had been severed from the initial title dispute. On August 16, 2010, Petitioning Creditors filed an amended petition seeking (i) recovery of royalties; (ii) damages for trespass and nuisance; (iii) declaratory judgment as to title to negate a *lis pendens* on the property; (iv) damages for tortious interference of contractual relations; (v) recovery of fraudulent transfers; (vi) punitive damages; and (vii) recovery of legal fees. (ECF No. 47-3 at 4-11). On September 1, 2010, Petitioning Creditors then filed this involuntary bankruptcy against Debtor. (Case No. 10-70606, ECF No. 1). The Petitioning Creditors filed two sets of claims against the Debtor.

The first set of claims (Nos. 2-10), referred to as the Trespass and Property Damages Proofs of Claims, equaled (i) the cost to restore the polluted land to its original condition; and (ii) the amount of Dewey Bellows's gross revenue traceable to the lease.[4] The Trustee and Dewey Bellows objected to this first set of claims. (ECF Nos. 1, 22). In a November 16, 2012

---

[3] The jury also concluded that Dewey Bellows was not part of a conspiracy to harm San Gregorio Ranch, nor did they damage the ranch through gross negligence.

[4] The second set of claims sought to recover royalty payments made to the Debtor. These claims do not factor into the issues addressed by this opinion.

Memorandum Opinion, the Court disallowed the Petitioning Creditors' claims to the extent they sought to recover damages for the pollution.[5] (ECF No. 129). However, the claims were allowed to the extent they sought recovery for Dewey Bellows's gross revenue traceable to the lease. *Id.* at 21-26.

Petitioning Creditors then filed a Motion for Partial Summary Judgment on April 4, 2013, arguing that they were entitled for a judgment for bad-faith trespass against Debtor. (ECF No. 171). The Court denied this motion, holding that although it was incontrovertible that Debtor trespassed upon Petitioning Creditors' land, Petitioning Creditors had not established that Debtor's conduct caused the injury (Dewey Bellows's unauthorized operations on the land after December 8, 2005). (ECF No. 241 at 9). Dewey Bellows filed its motion for summary judgment on June 14, 2013. (ECF No. 239). Bellows argued that gross revenues are not the proper measure of damages for Debtor's trespass and that Petitioning Creditors are not entitled to any further damages due to the one-satisfaction rule. In a supplemental brief, Dewey Bellows argued further that Petitioning Creditors were already compensated for lost revenues from the SWDA through the previous state court judgment of an award for permanent injury to the land (the saltwater spill). (ECF No. 252).

The Court issued an order on September 9, 2014 denying Dewey Bellows's summary judgment motion with respect to whether the loss of saltwater revenue was incorporated into the damages for permanent injury. (ECF No. 278). The Court reserved judgment on whether the state court judgment precluded any award of damages for the period *preceding* the permanent damage. At an October 20, 2014 hearing, the Court requested briefing on the remaining issues

---

[5] The Court held that because the Petitioning Creditors failed to articulate how a "bad-faith" trespasser could be forced to pay the cost of restoring the land, the Petitioning Creditors were barred under the one-satisfaction rule from seeking additional damages related to the pollution on San Gregorio Ranch.

of Dewey Bellows's summary judgment motion. Dewey Bellows argues that Petitioning Creditors are barred from seeking additional damages for several reasons.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[6] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.

---

[6] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

**I. The One-Satisfaction Rule**

Dewey Bellows argues that the one-satisfaction rule bars recovery from Debtor for trespass due to Bellows's saltwater disposal operation. "The one-satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). The rule applies in situations where multiple defendants commit the same act as well as when multiple defendants commit different acts which result in the same injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). "There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule." *Sterling*, 822 S.W.2d at 8.

The one-satisfaction rule cannot be applied in this case, however, because Petitioning Creditors have never recovered for a trespass to their land for months 1-59 of the SWDA. Plaintiffs may recover damages on alternate theories of liability if they can show separate and distinct injuries. *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App. 2007). The injury caused by the saltwater spill and the injury caused by Debtor's trespass are separate and distinct.[7] Even if a spill had never occurred and the land suffered no damage, an unlawful entry onto another's land is still an injury recognized by law. *See McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex. Civ. App. 1934) ("[E]very unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight, and gives a cause of action to the injured party.") When the state court jury awarded Petitioning Creditors $400,000, they were

---

[7] The Court has already held that Petitioning Creditors have potentially suffered separate legal injuries. "Debtor's alleged "bad-faith" trespass is arguably the proximate cause of several injuries: (i) Debtor unlawfully occupied, and excluded the Petitioning Creditors from, San Gregorio Ranch for many years; (ii) Debtor unlawfully received monies from leasing San Gregorio Ranch to Dewey Bellows; and, (iii) Debtor's unlawful lease of the land resulted in pollution to San Gregorio Ranch." (ECF No. 129 at 17).

compensating Petitioning Creditors for the diminution in land value due to Dewey Bellows's negligence, not for any trespass. If the jury verdict *had* compensated for trespass, then the same one-satisfaction rule would have barred the state court from entering a separate directed verdict for $81,041.86 due to Bellows's trespass in month 60 of the SWDA. This was not the case.

Dewey Bellows contends that there is only one overarching injury because Debtor's liability for trespass is derivative of Bellows's liability from the SWDA operation. According to Bellows, the actions of Debtor did not cause a distinct injury to Petitioning Creditors apart from the acts or omissions of Bellows in conducting the SWDA operation. As noted above, however, Debtor did potentially cause separate injuries by inviting Dewey Bellow's onto the land unlawfully and collecting monies from Bellows to which he was not entitled. Debtor's liability for these separate injuries is not derivative of Dewey Bellows's conduct because he was directly trespassing on the ranch. The primary case cited by Bellows makes abundantly clear that the one-satisfaction rule can only be invoked when there has been one injury. *El Paso Nat. Gas Co. v. Berryman*, 858 S.W.2d 362, 364 (Tex. 1993) ("The one satisfaction rule provides that a party which suffers but one injury can recover only one satisfaction for damages arising *from that injury*.") (emphasis added). Because Petitioning Creditors are seeking recovery for a separate injury, the one-satisfaction rule may not be invoked.

### II. Preclusive Doctrines

Dewey Bellows argues further that they are entitled to judgment because Petitioning Creditors' claims are barred under the preclusive doctrines of res judicata and collateral estoppel. For the following reasons, summary judgment is denied as to both preclusive doctrines.

*Res Judicata*

Res judicata, also known as claim preclusion, prevents the relitigation of a claim or cause of action that was finally adjudicated, as well as related matters that should have been adjudicated in a prior dispute. *Barr v. Resolution Trust Corp. ex rel. Sun Belt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). The elements that must be met to invoke res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims or those that could have been raised in the first action. *Brown v. Zimmerman*, 160 S.W.3d 695, 701-02 (Tex. App. 2005). Even assuming that the first and third elements have been met, because Debtor and Dewey Bellows are not identical parties, Dewey Bellows must demonstrate that they are in privity with Debtor.

There is no prevailing definition of privity that can be applied to all res judicata cases. *Id.* at 703. The determination of who are privies requires a careful examination of the circumstances of each case. *Id.* "Privity connotes those who are in the law who are so connected with a party of judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Gaughan v. Spire Council of Co-Owners*, 870 S.W.2d 552, 555 (Tex. App. 1993). It is not established by the mere fact that persons may happen to be interested in the same question or proving the same state of facts. *Id.* A person can be shown to be in privity with a party in at least three ways: (1) he can control the action even though not a party to it; (2) his interests can be represented by a party; or (3) he can be a successor in interest. *Brown*, 160 S.W.3d at 703.

Debtor and Dewey Bellows do have a contractual relationship, but this is not enough to show privity for res judicata purposes. Neither party has the ability to control the actions of the

other. Nor can it be said their interests are aligned. Debtor has every interest in reducing his own liability by potentially showing that Dewey Bellows was the bad actor.[8] The indemnification provision may give Bellows an interest in lessening Debtor's liability, but only if the provision covers liability arising from Debtor's trespass. Indeed, Bellows will be incentivized to argue that the provision does not, in fact, cover such liability. Accordingly, the parties' conflicting positions prevent them from representing each other's interests. Finally, neither party is a successor in interest to the other. Because Debtor is not in privity with Dewey Bellows, res judicata cannot be invoked against Petitioning Creditors.

*Collateral Estoppel*

Collateral estoppel, or issue preclusion, is a doctrine designed to prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). A party seeking to assert collateral estoppel must demonstrate that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Id.* Unlike res judicata, it is only necessary that the party *against whom* the doctrine is asserted was a party or in privity with a party in the first action. *Id.*

The parties dispute whether the issue to be estopped was fully and fairly litigated at the first trial. Petitioning Creditors are attempting to show that Debtor was a bad faith trespasser and should be required to pay to the Petitioning Creditors the gross revenues received by the Debtor from Dewey Bellows's for months 1-59 of the SWDA. The issue of Debtor's liability for good or bad faith trespass was never specifically addressed in the state court trial against Bellows.

---

[8] The Court has previously indicated that Debtor may be able to negate Petitioning Creditors' causation argument if he could demonstrate that Dewey Bellows became aware that Debtor never had any rights in the land yet decided to remain on the land anyway and continue with the SWDA operations. (ECF No. 241 at 11).

Although the precise issue of Debtor's trespass was not addressed, this does not end the analysis. The jury did make a finding that Dewey Bellows did not commit a trespass and was not engaged in a conspiracy with Debtor.[9] Dewey Bellows contends that the jury's finding on both the civil conspiracy and trespass charges precludes a judgment against Debtor for bad faith trespass.

Dewey Bellows argues the jury determination that Bellows was not a trespasser for months 1-59 of the SWDA is a fact essential to Petitioning Creditors' trespass claims against Debtor. According to Bellows, because there was a determination that the primary actor—Bellows—was not a trespasser, Debtor cannot then be characterized as a trespasser for the SWDA operation. This assertion is contrary to the law of trespass. The elements of trespass are (1) the plaintiff owns or has a right to lawfully possess the property; (2) the defendant entered the plaintiff's and the entry was physical, intentional, and voluntary; and (3) the defendant's trespass caused injury to the plaintiff. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App. 2006). A defendant may additionally be held liable for inviting a third party to enter the property of the plaintiff. *See Falkenstein*, 191 S.W.3d at 798; *Watson v. Brazos Elec. Power Coop.*, 918 S.W.2d 639, 645 (Tex. App. 1996); *Hous. Lighting & Power Co. v. Sue*, 644 S.W.2d 835, 842 (Tex. App. 1982). "If . . . the actor intentionally causes a third person to enter land, he is fully liable as though he himself enters." Restatement (Second) of Torts § 158 cmt. j (1977).

In *Falkenstein*, the defendant was found liable for inviting a contractor to trim trees on his neighbor's property without ever entering the land himself. 191 S.W.3d at 795-96. Finding the contractor independently guilty of trespass was not a requirement to find the defendant liable.

---

[9] Petitioning Creditors argue that because the final judgment in the state court case did not incorporate or approve the entire jury charge, no final judgment was ever entered on the issue of Bellows's trespass. However, the final judgment stated that "All relief not expressly granted is denied." (ECF No. 30-5 at 33). This language is known as a "Mother Hubbard" clause. If there has been a full trial on the merits before a jury, a "Mother Hubbard" clause indicates a court's intention to finally dispose of the matter. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001). Accordingly, the jury's finding that Dewey Bellows did not commit a trespass was incorporated into the final judgment through the "Mother Hubbard" clause.

We are presented with the same scenario here. Debtor, who did not own San Gregorio Ranch, intentionally invited Dewey Bellows onto the land through the SWDA. Regardless of whether Dewey Bellows committed a trespass, Debtor can still be found liable for inducing Bellows to enter the ranch. Because Dewey Bellows's trespass or lack thereof does not relate to an essential element of Petitioning Creditors' claims against Debtor, applying collateral estoppel is not appropriate.

Petitioning Creditors also submitted a civil conspiracy charge to the jury. The elements of a civil conspiracy claim are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages. *Operation Rescue-Nat'l v. Planned Parenthood of Hous. and South East Tex.*, 975 S.W.2d 546, 553 (Tex. 1998). In other words, to establish a conspiracy to trespass the plaintiff must prove both a civil conspiracy and the underlying trespass. Petitioning Creditors submitted Debtor as a co-conspirator on the conspiracy charge and the jury returned a "no" verdict. Dewey Bellows interprets this jury finding as a final adjudication of an essential element of Petitioning Creditor's current trespass claim against Debtor.

The evidentiary record does not support such an assertion. On the question of conspiracy, the jury charge read as follows:

> Were Dewey Bellows Operating Company Ltd. and Gabriel Rodriguez part of a conspiracy that harmed San Gregorio Ranch or its owners?
>
> To be part of a conspiracy, any person listed above and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in damage to San Gregorio Ranch or its owners. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

(ECF No. 30-5 at 27).  Dewey Bellows believes that the jury's negative answer to this question prevents the Court from finding Debtor guilty of trespass.  The only issue this particular jury charge decided, however, is that Debtor and Dewey Bellows did not agree to a common objective or course of action that damaged San Gregorio Ranch.  This is simply not relevant to the question of Debtor's trespass.  Debtor intentionally entered into a contract with Dewey Bellows which caused Bellows to enter upon San Gregorio Ranch.  Under Texas law as set forth in *Falkenstein*, Debtor is guilty of a trespass.  Debtor did not conspire with Dewey Bellows to harm San Gregorio Ranch, but he still wrongfully possessed the land and invited others onto it.  The jury never decided that Debtor did not commit the underlying tort of trespass, merely that Petitioning Creditors failed to meet the elements of a conspiracy claim.

Even if the state court judgment did finally dispose of facts essential to elements of Petitioning Creditors' claims, the inconsistencies between the Texas Court of Appeal's ruling in *Garza III* and the final judgment in the Starr County District Court Trial bar application of collateral estoppel.  "The estoppel doctrine . . . is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct."  *Standefer v. United States*, 447 U.S. 10, 23 n.18 (1980).  The Restatement (Second) of Judgments states that:

> Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct.  Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted. . . . That such a doubtful determination has been given effect in the action in which it was reached does not require that it be given effect against the party in litigation against another adversary.

§ 29 cmt. f (1982).  In cases where a prior determination of an issue is in itself inconsistent with some other adjudication of the same issue, trial courts have broad discretion to determine

whether offensive collateral estoppel should apply. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979).

*Garza III* was a final determination that Petitioning Creditors are the rightful owners of the nine tracts of land, including San Gregorio Ranch. 2007 WL 2116411 at *6. Petitioning Creditors owned the land upon Santiago Rodriguez's death on October 19, 1984. *Id.* It is undisputed that Dewey Bellows conducted saltwater disposal operations on San Gregorio Ranch at some point after October 22, 2002 without permission from Petitioning Creditors. However, the Starr County jury determined that Dewey Bellow's was not a trespasser. The evidentiary record is not clear as to what evidence the parties presented to the jury in the suit against Dewey Bellows, but this verdict appears to be inconsistent with *Garza III*. Texas defines trespass broadly as "one who, not having title thereto, without consent of the true owner, makes entry [upon the land]." *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex. Civ. App. 1934). Every unauthorized entry onto upon land of another is a trespass, *even if the defendant entered under a bona fide claim of right*. *Id.* Dewey Bellows may have believed that it contracted with the landowner, but it still entered onto the ranch without permission from the actual landowners. Given the finding of *Garza III*, this was a trespass. However, the jury reached a different conclusion. Because the jury verdict in the Starr County suit is inconsistent with *Garza III*, it should not be given preclusive effect.

### III. Revenues Accrued After the Spill

Dewey Bellows argues alternatively that if Petitioning Creditors are allowed to proceed with their suit against Debtor, they should be barred from recovering any SWDA revenues accruing after San Gregorio Ranch suffered permanent damage resulting from the spill. With regards to damages, Texas law makes a distinction between a temporary and permanent injury to

realty. Where the injury is permanent, the general measure of damages comprehends and includes loss of use and enjoyment. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984). By contrast, damages for temporary injury to realty may include *recovery* for loss of use and enjoyment. *Vestal v. Gulf Oil Corp.*, 235 S.W.2d 440, 442 (Tex. 1951). Petitioning Creditors received an award for $400,000 plus interest for the reduction in market value of the San Gregorio Ranch "immediately before the spill from the broken pipeline and at the time of trial." (ECF No. 30-5 at 23). This award was compensation for the permanent injury to San Gregorio Ranch. *See B.A. Mortg. Co. v. McCullough*, 590 S.W.2d 955, 957 ([T]he general rule used to determine the measure of damages where a permanent injury to land has occurred . . . is that the measure of damages is the diminution of the value of the land, unless the injury can be repaired at less cost. . . .").

Accordingly, Petitioning Creditors have already been compensated for the loss of use and enjoyment of the ranch after the date of the spill. Petitioning Creditors may not recover SWDA-related revenues for the months following the spill. Prior to the spill, however, Petitioning Creditor's suffered injuries due to the saltwater disposal operation which were entirely separate from the spill.[10] If it is determined that Debtor committed a bad-faith trespass, Petitioning Creditors may be entitled to damages which includes compensation for their loss of use and enjoyment of the land up to the date of the spill. Such an award may include the recovery of SWDA-related damages from the Debtor.

Dewey Bellows urges the Court to find that the spill occurred in July 2007. Such a finding is not supported by the evidence at this juncture. Bellows provides a satellite photograph

---

[10] An injury is permanent if is presumed to continue indefinitely and cannot be abated through an injunction. *Cook v. Exxon Corp.*, 145 S.W.3d 776, 783-84 (Tex. App. 2004). The injection of saltwater beneath the surface is a permanent injury because the injected saltwater remains and cannot be removed through an injunction. However, the trespass to the surface estate (entry onto the land by workers, construction of machinery, etc.) was temporary.

allegedly showing that the spill existed as of August 12, 2007. (ECF No. 280 ex. B). However, the image as reproduced to the Court is not sufficiently clear to be conclusive. The parties do agree that the spill occurred sometime in the second half of 2007, but not on an exact date. There is a genuine issue of material fact as to the exact date of the spill. Dewey Bellows's motion for summary judgment is granted to the extent it bars Petitioning Creditors from seeking damages for the period after the spill. The motion for summary judgment is denied to the extent it seeks a determination that the spill occurred in July 2007.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **December 19, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE